THOMAS HEWETT et al., Appellants, v MARINE MIDLAND BANK OF SOUTHEASTERN NEW YORK, N.A., Respondent, et al., Defendants.

Second Department, April 26, 1982

APPEARANCES OF COUNSEL

*Suozzi, English, Cianciulli & Peirez, P.C.* (*J. Irwin Shapiro* and *Charles J. McEvily* of counsel), for appellants.

*Sullivan & Cromwell* (*Richard G. Menaker* and *Nancy Abraham* of counsel), for respondent.

OPINION OF THE COURT

THOMPSON, J.

This action, which raises questions under the Uniform Commercial Code about indorsements, transfers and guarantees, arises from two notes made in 1974 by certain of the corporate defendants. The notes were allegedly transferred to and guaranteed by defendant Marine Midland Bank of Southeastern New York, N.A. (hereinafter Marine); the makers of the notes are either bankrupt or allegedly without funds to make payment. The plaintiffs were trustees or former trustees (hereinafter Trustees) of a labor union pension fund (hereinafter Fund). Defendants Kingco Investors, Ltd. (hereinafter Kingco), CBA Equities, Inc. (hereinafter CBA), Old Route 17 Shopping Center (hereinafter Old Route 17), Spring Realty Corp. (hereinafter Spring), and Maggliolo Pal Contracting Co., Inc. (hereinafter Maggliolo Pal), are affiliated corporations (hereinafter the Pal Group). They were owned or controlled by one Sidney Pal. A number of the corporations in the Pal Group entered into bankruptcy proceedings or were adjudicated bankrupt in late 1974 and 1975. Both Marine and the Fund are creditors of one or more of the bankrupt corporations.

The first note is dated March 28, 1974 (hereinafter the March note). It was made by Old Route 17 in the amount of $600,000, payable one year after date, with interest at 13% per annum. The payees were Marine and Kingco. In May, 1974, Pal approached Bernard Tolkow, then an officer of the Fund, and showed him the March note, requesting that the Fund lend the Pal Group $300,000 with the March note as security. Both payees on the March note had indorsed it "to the extent of the first * * * $300,000" to CBA underneath the following printed statement: "FOR VALUE RECEIVED, the undersigned (jointly and severally, if more

than one) irrespective of the genuineness, validity, regularity or enforceability of this note, hereby indorse(s) this note and unconditionally *guarantee(s) to any holder of this note the full and prompt payment of the indebtedness evidenced by this note when due by acceleration or otherwise;* agree(s) to all the terms and conditions of this note; and consent(s) that from time to time, without notice to the undersigned and without affecting any liability of the undersigned, any collateral for payment of such indebtedness may be exchanged, released, surrendered, sold (whether on foreclosure or otherwise) applied or otherwise dealt with by and at the election of any holder hereof, any time of payment under this note may be extended or accelerated in whole or in part, and this note may be renewed in whole or in part. The undersigned waive(s) presentment and notice of dishonor and protest." (Emphasis supplied.) Marine's indorsement was signed by one Gorden E. Fitzgerald, then a vice-president of Marine. According to Tolkow's deposition testimony, Pal said that the note was "secured" by Marine, that the bank did not have the money to lend at that time, but that the March note would be paid off in a very short time by the bank or one of the corporations in the Pal Group. Tolkow telephoned Fitzgerald who urged him to make the loan and verified Marine's guarantee. Tolkow said he was told that the March note would be paid off "in a very short period of time, two, three, four months."

Since the Fund did not have the money available, Tolkow sought a loan to the Fund from Bank Leumi, where the Fund had some certificates of deposit. Bank Leumi requested and received a document from Marine, allegedly signed by an assistant cashier, certifying that Fitzgerald had authority to "assign and transfer" the March note. The certification provides, in pertinent part: "The undersigned Assistant Cashier of Marine Midland Bank of Southeastern New York, N.A. hereby certifies that according to the By-Laws and Resolutions of this bank presently in force and effect, Mr. Gordon Fitzgerald, a Vice President of this Bank, is authorized and empowered to assign and transfer, on behalf of this bank, a certain note made by Old Route 17 Shopping Center, Inc. in the sum of $600,000.00, said note

being dated March 28, 1974 and being payable one year after date to the order of this bank and Kingco Investors, Ltd. $300,000.00 as said note is assigned."

CBA then indorsed the March note "to the extent of the first * * * $300,000" to the Fund. Bank Leumi agreed to lend the Fund $300,000 (secured by the Fund's certificate of deposit). The amount was then forwarded to an attorney for the Pal Group. The Fund also indorsed the March note to Bank Leumi. The Fund apparently recorded the transaction in a ledger book, showing a loan to CBA and Kingco in the amount of $300,000 with interest at 18% and payments in the amount of $4,500 in interest (some of the checks apparently bounced).

At an unspecified date between April 4 and August 16, 1974, Pal again approached Tolkow to request a loan from the Fund, this time in the amount of $50,000. This time Pal showed Tolkow a note made by Maggliolo Pal to Spring. This note was dated April 4, 1974 and was for a period of one month (hereinafter the April note). The face of the note did not specify a rate of interest. The back of the April note contained the same legend as printed on the March note. The April note had been assigned by Maggliolo Pal to Marine, and Pal had indorsed it individually. Marine had assigned it to CBA, per signature of Fitzgerald. When Tolkow saw the April note, it had also been indorsed "To the order of Sidney Pal of [the] Fund" by CBA. Tolkow at first refused to deal with Pal because he was "troubled" by all the indorsements and thought the April note was strange. On behalf of the Fund Tolkow thus indorsed the April note back to CBA. Further discussion followed. Tolkow spoke with Fitzgerald by telephone. Fitzgerald allegedly explained that Marine was overloaned or it would make the loan itself, but said that Marine would guarantee the Fund's loan. The loan was a "short-period transaction", and the Fund would be repaid "as soon as the bank was able to free some money up". The Fund then lent $50,000 to Pal and received the April 4 note as security.

In a letter dated August 16, 1974, Tolkow demanded payment from Marine on the March note, stating that the due date had been accelerated. In a second letter of the same date, he also demanded payment of the April note

which was overdue. By telegram, Marine refused and denied liability. On its due date, Bank Leumi requested payment by Marine for the March note. Marine refused to make payment. Bank Leumi then indorsed the March note back to the Fund without recourse.

The Fund, by its Trustees, then brought suit against Marine and the named corporations of the Pal Group, pleading four causes of action. The first and third seek recovery on the March note, respectively on Marine's indorsement and on its guarantee. The second and fourth causes seek recovery respectively on Marine's indorsement and guarantee of the April note. Following discovery by Marine, the bank moved for summary judgment, alleging, *inter alia,* that the signatures by Fitzgerald were unauthorized and that the notes violated the Statute of Frauds. The Fund argued, *inter alia,* that the motion should be denied so that it could have discovery. Special Term granted summary judgment, concluding that the signatures were unauthorized and that the March note violated the Statute of Frauds.

INDORSEMENT OF THE MARCH NOTE

■ We agree with Special Term that the first cause of action should be dismissed as to Marine. The March note itself provides that only the "first" $300,000 of its $600,000 total was assigned to the Fund. An indorsement of less than the full amount of an instrument (not of unpaid residue) is only a partial assignment. (Uniform Commercial Code, § 3-202, subd [3].) The indorsee has only the rights of a partial assignee, with a claim in equity against the maker or obligor when all parties are before the court. (*Blake v Weiden,* 291 NY 134.) Since the indorsement operated only as a partial assignment, the instrument was not negotiated, and the Fund was not a holder in due course. (Uniform Commercial Code, § 3-202; see § 3-302.)

The Fund's argument that it should be permitted to have discovery to determine whether the amount indorsed to the Fund was in fact an unpaid residue must be rejected because, given the language of the instrument, such a possibility is remote. (See CPLR 3212, subd [f].) The possibility becomes even more remote when considered in terms

of what Tolkow said he was told about the circumstances of the loan. The point was not raised in the Fund's opposing papers on the motion; the suggestion that the $300,000 was unpaid residue is pure speculation on this record. Special Term did not abuse its discretion by not, *sua sponte,* ordering further discovery on this issue. Mere speculation that some improbable remote circumstances may exist should not defeat summary judgment. (*Trails West v Wolff,* 32 NY2d 207, 221.) The argument that the Trustees waived discovery by filing a note of issue must be rejected because of the subsequent withdrawal of the note of issue, even though withdrawal was at Marine's insistence. (See Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3212:34, pp 451-452.)

## THE GUARANTEE OF THE MARCH NOTE

Although the March note was only partially assigned and not negotiated, the assignment was purportedly guaranteed, as alleged in the Fund's third cause of action. An assignor will be held to his express guarantee. (4 Corbin, Contracts, § 904; see Uniform Commercial Code, § 3-416.)

Special Term discounted the alleged guarantee, finding that Fitzgerald's signature was made without actual or apparent authority. It also concluded that the guarantee contained an oral, material term (the due date), thus rendering it contrary to the Statute of Frauds (General Obligations Law, § 5-701, subd a).

An agent's authority to sign an instrument on behalf of his principal is to be determined according to general agency law. (Uniform Commercial Code, § 3-403, subd [1].) There is a rebuttable presumption that a signature is authorized. (Uniform Commercial Code, § 3-307, subd [1].) An unauthorized signature is one made without actual, implied or apparent authority. (Uniform Commercial Code, § 1-201, subd [43].) "Any unauthorized signature is wholly inoperative" unless the principal "ratifies it or is precluded from denying it". (Uniform Commercial Code, § 3-404, subd [1].)

Special Term found that Fitzgerald had no authority because Tolkow admitted that he knew that Marine did not itself have money to lend. Special Term was incorrect to

hold at this juncture that the Fund was not justified in relying on Fitzgerald's apparent authority because of his statement about the bank's funds. Even if a bank is in a tight financial position or does not have funds available to make a particular loan, in the circumstances here described it does not follow that the bank could not be relied upon to indorse or guarantee a note. The test for determining notice of lack of authority to indorse a note is actual subjective knowledge, not mere negligence. (Cf. *Chemical Bank of Rochester v Haskell,* 51 NY2d 85.) Marine has not shown that the fund had such knowledge or that it was guilty of anything more than simple negligence.

In *Chemical Bank of Rochester v Haskell (supra)* the Court of Appeals found apparent authority in the general and managing partner to indorse notes for a limited partnership. The bank had purchased the notes at discount; the limited partners claimed that the general partner had indorsed the notes for its own purposes. Although the bank might have been more prudent and taken further steps, given suspicious circumstances surrounding the transactions, the bank did not act without good faith. On the actual question of apparent authority, the Court of Appeals stated (pp 90-91): "The code contemplates that it is possible for a person to have the power to indorse an instrument even though the signing is beyond actual authority, if the signer is clothed with apparent authority (see Uniform Commercial Code, § 3-207; McKinney's Cons Laws of NY, Book 62½, Uniform Commercial Code, § 3-403, official comment No. 1). Clearly, as the organizer and managing general partner for [the partnership, the indorser] had at least apparent authority to deal with negotiable instruments which were the property of the partnership." As to the bank's failure to make further investigation, the Court of Appeals said, in part (pp 93-94): "Chemical was not bound to be ' "alert for circumstances which might possibly excite the suspicions of wary vigilance" ' * * * There was no obligation on Chemical, as a purchaser of negotiable paper, to investigate the financial position of its transferor * * * The failure of Chemical to take steps to insure that [the general partner] was negotiating the instruments for partnership purposes * * * [does] not * * * indicate

impropriety * * * Chemical had reason to believe that [the general partner] was acting for a partnership purpose at the time that it sold the notes and received the proceeds." In the instant case, the Trustees and Bank Leumi did take some investigatory steps by asking whether Fitzgerald was authorized to indorse the notes. Special Term should consider whether Fitzgerald was clothed with apparent authority in view of the conclusions of the Court of Appeals in *Chemical Bank*. If the court should so conclude, it may not be necessary to consider Marine's arguments based on internal memoranda.

As to those internal memoranda, they are dated March 29, 1974. The record does not disclose the date that Fitzgerald signed the March note on behalf of Marine (which, on a motion for summary judgment, we must assume he did). It is possible he signed on March 28, and the record is barren of evidence of his authority on that date; the affidavit of an officer of Marine supporting its summary judgment motion states that Fitzgerald did not follow the procedures required by the March 29 memoranda. Neither this court nor Special Term is in a position to accept this statement on the present record. Further discovery on this question may be necessary. (CPLR 3212, subd [f]; *Terranova v Emil*, 20 NY2d 493.) There should be limits on an outsider's burden to determine the actual extent of an agent's authority, particularly when that authority is governed by internal memoranda not generally available to the public.

A principal may be precluded from denying an agent's authority by estoppel or negligence. (Uniform Commercial Code, § 3-404, Comment 4; see, also, § 3-406.) The record in this case strongly suggests negligence or estoppel, particularly with regard to the certification from the assistant cashier that Fitzgerald had authority to assign and transfer the March note. The Fund did not make its loan on the March note until it received the certification. There is no evidence in the record to show whether the certification came from a person in Marine's hierarchy such as to justify the Fund's reliance on the document. The "existence of 'apparent authority' depends upon a factual showing that the third party relied upon the misrepresentations of the agent because of some misleading conduct on the part of

the principal — not the agent." (*Ford v Unity Hosp.,* 32 NY2d 464, 473.) Even though the certification confirms the authority of Fitzgerald only to assign and transfer (not to guarantee), Special Term should consider whether there was an estoppel and whether there was adequate justification for the Trustees to conclude that Fitzgerald was clothed with authority to indorse the notes, thus binding Marine's guarantee of the March note, as earlier suggested.

Even if there were no actual or apparent authority, Marine would be bound by Fitzgerald's signature if it ratified the indorsement. Ratification "may be found from the retention of benefits received in the transaction with knowledge of the unauthorized signature". (Uniform Commercial Code, § 3-404, Comment 3.) If the principal accepts the benefits of its agent's misdeeds, with actual or imputed knowledge, it ratifies the agent's action. (*Marine Midland Bank v Russo Produce Co.,* 50 NY2d 31, 44.) On the record, it is impossible to determine the extent of any benefit Marine may have received because of the Fund's loan to the Pal Group, so it is impossible to resolve the question of ratification. If there is no finding of authority, then Special Term should consider this issue, permitting further discovery on the issue.

Special Term also held that the March note violated the Statute of Frauds, apparently concluding that the due date of the March note was agreed to orally. However, the record does not convince us that the March note falls within the statute. It is of course true that a promise to guarantee or pay the debt of another must be in writing. (General Obligations Law, § 5-701, subd a, par 2.) If the oral promise is made primarily to serve an interest of the promisor, the statute does not apply. Two requirements must be met in order to take an oral promise out of the statute: (1) the promise must be based on consideration to the promisor which confers a direct and substantial benefit upon him, not a mere detriment to or forebearance by the promisee; and (2) the promisor must be under an independent duty of payment irrespective of the liability of the principal debtor. (*Leonard Lang, Ltd. v Birch Holding Corp.,* 72 AD2d 806.) As stated before, this record does not

divulge the extent of any benefit that Marine received because of the Fund's loan to Marine's customers. It is clear from the guarantee itself that liability is fixed irrespective of the liability of the maker of the note.

Furthermore, the note and guarantee appear complete and clear on their face. That completeness and lack of ambiguity would normally imply that the parties intended to create an integrated agreement, so the parol evidence rule would apply. (*General Phoenix Corp. v Cabot,* 300 NY 87, 92; *Bethlehem Steel Co. v Turner Constr. Co.,* 2 NY2d 456, 460.) In the instant case, Marine cannot present evidence of an oral term in order to contradict the express terms of the written agreements. (See *Marine Midland Bank—Southern v Thurlow,* 53 NY2d 381; *Bank of Suffolk County v Kite,* 49 NY2d 827.) Neither Marine nor the Trustees can violate the parol evidence rule in order to show that an apparent written agreement is really an oral one.

There is some uncertainty in determining the finality of the written agreement because of Tolkow's statement that the March note would be paid "in a very short period of time". The question is whether the statement represented an oral term of the agreement or was merely extraneous verbiage that did not affect the agreement. Although the matter cannot be finally resolved on this record, Tolkow's statement need not be found to contradict the terms of the March note: there was nothing on the face of the instrument to preclude the Fund's accepting early payment if the debtor wished to make it.

In the face of all the unresolved issues encompassed by the third cause of action, summary judgment should not have been granted to Marine.

THE INDORSEMENT AND GUARANTEE OF THE APRIL NOTE

■ Special Term was correct in dismissing the second cause of action which involved the indorsement of the April note. The Fund had notice that the April note had been reacquired by a prior indorser. It therefore had notice of Marine's discharge by an intervening indorser. (Uniform Commercial Code, § 3-208.) Such notice discharged Marine

on its indorsement as to the Fund. (Uniform Commercial Code, § 3-304, Comment 4; see, also, § 3-602.)

That result, mandated by section 3-208 of the Uniform Commercial Code, does not necessarily imply, as Special Term assumed with regard to the fourth cause of action, that Marine is free from its alleged guarantee of the April note. A guarantee is an agreement separate from the contract which arises by simple indorsement or transfer. (See Uniform Commercial Code, § 3-416.) As one commentator explains, "Code § 3-208 is concerned only with the discharge of liability for the payment of the face of the paper. It does not have any effect upon the warranties made by those who have transferred the paper, whether they do so with or without an indorsement." (2 Anderson, Uniform Commercial Code [2d ed], § 3-208:13.)

A finding that Marine's agent had no authority to guarantee the April note is inappropriate at this time. Marine has failed to show that there are no remaining unresolved issues of fact as to the actual or apparent authority of Fitzgerald or the possibility of its ratification of his actions with regard to the April note. Special Term might well conclude that if Fitzgerald was clothed with apparent authority to guarantee the March note to the extent of $300,000, he had similar authority a few days or weeks later to guarantee the April note in the much smaller amount of $50,000.

The matter must be remitted to Special Term for further proceedings, including further discovery, on the third and fourth causes of action.

DAMIANI, J. P., GIBBONS and BRACKEN, JJ., concur.

Judgment of the Supreme Court, Dutchess County, entered May 22, 1979, reversed, with $50 costs and disbursements, and motion for summary judgment is granted only to the extent that the first and second causes of action in the complaint are dismissed on the merits as to Marine Midland Bank of Southeastern New York, N.A. and is otherwise denied. The matter is remitted to Special Term for further proceedings on the third and fourth causes of

action, in accordance with the opinion of Justice THOMP-SON.