JOHN A. BLAKE, as Trustee in Bankruptcy of R. WEIDEN & SONS, INC., Appellant, *v.* FRANK WEIDEN, Respondent.

(By Original Summons.)

FRANK WEIDEN, Plaintiff, *v.* JOHN A. BLAKE, as Trustee in Bankruptcy of R. WEIDEN & SONS, INC., Appellant, et al., Defendants.

(By Counterclaim.)

Argued June 8, 1943; decided October 21, 1943.

*Thomas L. J. Corcoran, Keith Lorenz* and *John F. X. Finn* for appellant. As a matter of law, a bankrupt's debtor who is sued on his individual debt to the bankrupt cannot offset an admittedly " undivided " interest that said defendant has in a debt of the bankrupt to various creditors who together own the entire " undivided " debt,— unless either (a) all such creditors of the bankrupt consent to such offset or (b) proof is adduced of " peculiar equities " which warrant a departure from the general rule. (*Gray* v. *Rollo,* 18 Wall. 629; *Hopkins* v. *Lane,* 87 N. Y. 501; *Burns* v. *Lopez,* 256 N. Y. 123; *Lowden* v. *Northwestern Nat. Bank & Trust Co.,* 298 U. S. 160; *Frank* v. *Mercantile Nat. Bank,* 182 N. Y. 264; *Siegel* v. *State,* 262 App. Div. 388; *Hulse* v. *Knapp,* 20 F. Supp. 137; *Houghton* v. *Thomas,*

220 App. Div. 415, 246 N. Y. 535, 248 N. Y. 523.) Respondent's differentiation between joint tenancies and tenancies in common is irrelevant. An undivided portion of a claim cannot be set off against an entirely different individual claim, whether the undivided portion of the one claim be a joint tenancy or a tenancy in common. It is the fact that the claim is undivided that is significant. (*Gray* v. *Rollo*, 18 Wall. 629.) Respondent's offsets are pleaded as '' undivided '' interests, not as portions of partitioned claims. Besides, partition after bankruptcy is impossible. (*Taylor* v. *Millard*, 118 N. Y. 244; *Hulse* v. *Knapp*, 20 F. Supp. 137; *Scott* v. *Armstrong*, 146 U. S. 499; *Yardley* v. *Philler*, 167 U. S. 344.)

*Ralph Stout* and *Harold A. Gates* for respondent. Defendant's counterclaims were properly interposed; and upon the undisputed facts defendant was entitled to judgment thereon. (*Barber* v. *Rowe*, 200 App. Div. 290, 235 N. Y. 549; *Gray* v. *Rollo*, 18 Wall. 629; *Jackson* v. *Moore*, 94 App. Div. 504; *Soule* v. *Mogg*, 35 Hun, 79; *American Guild* v. *Damon*, 186 N. Y. 360; *Parsons* v. *Nash*, 8 How. Pr. 454.)

DESMOND, J. In 1939, R. Weiden & Sons, Inc., became a voluntary bankrupt and plaintiff qualified as its trustee. From the books of the bankrupt corporation it appeared that there was a balance of $8,103.68 owing to it on open account from defendant who was one of its stockholders and had been one of its officers from 1930 to 1938. The trustee sued defendant. The latter's answer contained a number of counterclaims. Five of the counterclaims involved five negotiable promissory notes, each for $5,000 and each given by the corporation in 1930 to Robert Weiden, defendant's father who died in 1937. All of the notes remain unpaid. At some time between the father's death and the bankruptcy, defendant's two brothers, Charles R. Weiden and Hermann J. Weiden, who were the executors of the father's will, put on the back of each of the notes a form of indorsement, signed by the estate, by themselves as executors, and worded thus: '' Pay to the order of Charles R. Weiden, Hermann J. Weiden and Frank J. Weiden, share and share alike, as tenants in common.'' Defendant is the third named indorsee. The brothers Charles and Hermann Weiden filed in the bankruptcy proceedings proofs of claim on their purported

individual shares of the five notes, as indorsees. The record does not show whether those claims in bankruptcy have been allowed, or whether they were contested by the trustee. Defendant attempted in his five counterclaims to use his purported share of the five notes as a set-off against the debt for which the trustee is suing, defendant's share of the notes, including interest, being larger in amount than the debt in suit. Whether defendant has an interest, available for such use, in the five notes, is the only question before us. The facts are undisputed. At the close of plaintiff's case, which developed the facts as above recited, plaintiff moved to dismiss the counterclaims and each side moved for a directed verdict. Plaintiff's motion was granted and the counterclaims dismissed. The Appellate Division modified (in effect it reversed) by denying plaintiff's motion to dismiss the counterclaims and by directing judgment for defendant in amount sufficient to offset plaintiff's claim.

An analysis of section 62 of the Negotiable Instruments Law will, we think, lead us to the answer to the question we have before us. That section, which is identical with section 31 of the " Uniform Negotiable Instruments Law " and is found on the statute books of many of our states and of England, is as follows: " The indorsement must be an indorsement of the entire instrument. An indorsement, which purports to transfer to the indorsee a part only of the amount payable, or which purports to transfer the instrument to two or more indorsees severally, does not operate as a negotiation of the instrument. But where the instrument has been paid in part, it may be indorsed as to the residue."

The indorsement, or attempted indorsement, of the five notes described in the counterclaims, did not, of course, offend against the first sentence of section 62, since the form of indorsement used applies to the whole of each note. The third sentence of the section has no relevancy to this case. The second sentence, however, does deal with indorsements like those here under scrutiny and provides that such a writing on the back of a note " does not operate as a negotiation of the instrument." The meaning of that phrase has been examined in many opinions and texts. Some of those authorities (see *Martin* v. *Hayes,* 44 N. C. 423; *Conover* v. *Earl,* 26 Iowa 167; Byles on Bills [20th ed.] p. 161; Brannan on Negotiable Instruments Law

[5th ed.], pp. 426, 427) say, or seem to say, that such a purported indorsement transfers to the indorsees no title at all, or at least no title on which they can sue at law. Other writers give section 62 a narrower meaning and hold that, while such an indorsement " does not operate as a negotiation," it does nevertheless convey to the indorsee not the rights of a holder in due course but a title of some kind to his share of the note or, more precisely, to a non-negotiable chose in action, on which he may sue. (*Flint* v. *Flint*, 6 Allen [88 Mass.] 34; *Edgar* v. *Haines*, 109 Ohio St. 159.) There seem to be no New York cases directly in point. Two decisions in this State (*King* v. *King*, 37 Misc. 63, affd. 73 App. Div. 547, appeal dismissed 172 N. Y. 604, and *Barkley* v. *Muller*, 164 App. Div. 351, 168 App. Div. 110) have a bearing. In the *King* case one of the beneficiaries of an estate took from the executor a written *assignment* of a one-fifth part of a note belonging to the estate. In the *Barclay* case there had been an *indorsement* to plaintiff of one half of a note. In both cases it was held that there could be no recovery, but it is to be noted that in each of those cases the transfer (indorsement or assignment) covered only a *part* of the note and did not, as in the present case, involve a transfer of the whole instrument in parts.

In our view, the better rule is that when there has been a purported indorsement of the whole instrument, in separate parts to two or more transferees, the purported indorsees take legal title to their several shares and may sue together, or any one or more may sue, provided all the other indorsees are brought in as parties. (In the case before us defendant did bring in the other two indorsees, alleging without contradiction that they had refused to join with him.)

We reject the view that section 62 makes such an indorsement a nullity. The language of that and other sections of the Act compel a narrower meaning. The statement in section 62 that the indorsement does not " operate as a negotiation " suggests that it is not entirely inoperative. " An instrument is negotiated " says section 60, " when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof." Reading those two sections with the references to the word " holder " in other parts of the Act (see §§ 2, 52, 91) makes it clear that the intent of section 62,

so far as applicable here, is only to deprive the several indorsees of the special rights which the Act gives to " holders " of properly negotiated instruments. Section 62 does not, we decide, deprive such indorsees of the rights of ordinary assignees and the irregular indorsement may be treated as an assignment. (*Kenny* v. *Hinds*, 44 How. Pr. 7; *Merchants' Nat. Bank* v. *Gregg*, 107 Mich. 146.) No reason appears why the misguided use of an indorsement form should put the purported indorsees entirely outside the protection of the courts. Surely there was in this case at least a constructive delivery of the note to the three beneficiaries of the estate and, that being so, the transferees would have taken title to the instrument or to the chose in action without any written words of transfer at all. (Negotiable Instruments Law, § 79; *Goshen Nat. Bank* v. *Bingham*, 118 N. Y. 349, 355; *Hooker* v. *Eagle Bank of Rochester*, 30 N. Y. 83.) The use of an unrecognized form of indorsement should leave them in no worse position.

A study of the history of, and reason for, section 62 leads to the same answer. The common law looked with disfavor upon any indorsement that did not transfer the whole instrument at one time and to one person. (*Douglass* v. *Wilkeson*, 6 Wend. 637.) Thus did the law conform to the " custom of merchants " which was that a holder of a note could not " apportion such personal contract, for he cannot make a man liable to two actions, where by the contract he is liable but to one." (*Hawkins* v. *Cardy* [1698], 1 Lord Raymond's Reports 360.) The last sentence in the quoted excerpt from the *Hawkins* case gives us a valuable clue to such mystery as there is in section 62. The whole purpose of the restrictions there embodied was to prevent a multiplicity of suits. (See *Larson* v. *Lybyer*, 312 Ill. App. 188.) So in earlier days in New York it was the rule at law that the assignee of part of a chose in action could bring no separate action to collect his part. (*King* v. *King*, *supra*.) Equity, as usual, was not so circumscribed and found a way to give the assignee relief, by devising a practise of bringing in, as added parties, the co-owners of the claim. (*Risley* v. *Phenix Bank of City of New York*, 83 N. Y. 318, 329; *Dickinson* v. *Tysen*, 125 App. Div. 735.) Successive revisions of our practice statutes achieved an assimilation of the practice in suits at law to the procedures invented by equity. The result is that

under our present practice a suit for money only by a partial assignee of a claim may be brought at law, provided the plaintiff bring in his co-assignees. (*Porter* v. *Lane Construction Corp.,* 212 App. Div. 528, affd. 244 N. Y. 523; *Grosner* v. *Abramson,* 162 Misc. 731, 733, affd. 248 App. Div. 575; Civ. Prac. Act, § 194.) " We think \* \* \* that the question is one of parties, and not one of jurisdictional facts." (CROUCH, J., in *Porter* v. *Lane Construction Corp., supra,* 212 App. Div. at p. 531.) This interpretation of defendant's rights leaves undisturbed the rule of section 62 that the several indorsees do not have the rights of " holders " of negotiable instruments, the rule of section 79 that delivery of a negotiable instrument transfers title with or without indorsement, and the rule against splitting causes of action. Defendant as co-assignee of a non-negotiable chose in action had the right to maintain his counter-claims so long as he brought his co-assignees into the action.

Even if the enforcement of these counterclaims did involve a splitting of each of the five causes of action on the separate notes, such splitting could be justified in two ways. *First,* the record here at least suggests that the splitting was really done by the other two purported assignees who filed separate proofs of claim in bankruptcy before this suit was brought (*Gock* v. *Keneda,* 29 Barb. 120; *Jackson* v. *Moore,* 94 App. Div. 504), and that plaintiff trustee, by acquiescence, probably waived the benefits of the rule against splitting. (See *Carrington* v. *Crocker,* 37 N. Y. 336.) *Second,* the rule against splitting does not forbid the use of part of a claim as a set-off, retaining the rest for later use. (*Gordon* v. *Van Cott,* 38 App. Div. 564; *Hett* v. *Lange,* 139 App. Div. 743.) A fair application of that exception permits defendant to use as a set-off an amount which was equal to the claim in suit but less than his one third of the whole amount due on the notes.

Having held that defendant had legal title to, and causes of action at law on his share of the notes, we necessarily conclude that he brings himself well within the Bankruptcy Act requirements as to set-offs, found in section 68 of that Act (U. S. Code, tit. 11, § 108) : " (a) In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid. (b) A set-off or

counterclaim shall not be allowed in favor of any debtor of the bankrupt which [1] is not provable against the estate and allowable under subdivision g of section 93 of this title; or [2] was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy.'' Plaintiff's and defendant's claims are mutual and defendant's claim is by its nature one provable in bankruptcy.

Appellant urges as an authority against this set-off, *Gray* v. *Rollo* (85 U. S. 629). In *Gray* v. *Rollo* a bankrupt insurance company held two promissory notes made jointly by Gray and another man, and was indebted on policy claims to a partnership of which Gray was a member. Gray's partner was not a party to the notes held by the bankrupt. The opinion says that the '' joint '' claim of the partnership could not be set off against Gray's individual liability to the bankrupt estate. In *Gray* v. *Rollo* (as it was in *Hopkins* v. *Lane,* 87 N. Y. 501) the word '' joint '' seems not to be used in the technical sense but as describing a claim against the bankrupt held by several persons who under local law were tenants in common. (See *Kiersted* v. *West,* [N. Y.] 13 Weekly Digest 106.) *Gray* v. *Rollo,* nonetheless, does not go so far as to hold that such a tenant in common may not use as a set-off *his share* of the claim against the bankrupt but only that he may not '' appropriate '' to himself the claim that belongs to his partners as well as to himself: '' equity will not allow him to pay his separate debt out of the joint fund.'' (Opinion, at p. 635.) No such misappropriation has been attempted by defendant here, since his separate, fractionally determined, share of the five notes was assigned to him before bankruptcy, and in his counterclaims he is alleging, and using as set-offs, only his own share, not the whole of the notes. (See discussion in *Taylor* v. *Root,* 4 Abb. N. Y. App. 382.)

The judgment should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and THACHER, JJ., concur.

Judgment affirmed.