James T. WARREN, Plaintiff-Appellant,

v.

John Richard KIRWAN,
Defendant-Respondent.

No. 11184.

Missouri Court of Appeals,
Southern District,
Division Two.

April 10, 1980.

Motion for Rehearing and for Transfer
Denied May 1, 1980.

Charles M. Wesley, Waynesville, for plaintiff-appellant.

E. Mitchell Hough, David W. Bernhardt, Bussell, Hough, Bernhardt, Leighton & O'Neal, Springfield, for defendant-respondent.

MAUS, Judge.

This appeal involves the respective rights of an insured owner and his collision coverage insurer to maintain an action against a tort-feasor defendant based upon damage to the insured's automobile. In this action the plaintiff, insured owner, in substance alleged: that while his automobile was being driven by a bailee the defendant tort-feasor negligently caused his pickup truck to collide with that automobile damaging the same in the amount of $1928.15; that by reason of loss of use he had expense of $1450.00; and he prayed judgment for a total of $3378.15. The defendant moved to dismiss the petition alleging the plaintiff had assigned his cause of action to his insur-

er and therefore the plaintiff was not the real party in interest. The motion was supported by plaintiff's admission that he did execute an instrument entitled "Proof of Loss" which recited the occurrence, actual damage of $1449.15, a deductible of $50.00, and that for $1399.15 the insured released the insurer and acknowledged the receipt of that amount in full satisfaction and settlement of said loss. The instrument in a separate paragraph provided: "The insured hereby assigns, transfers, and sets over to the Insurer any and all claims or causes of action of whatsoever kind and nature which the Insured now has, or may hereafter have, to recover against any person or persons as the result of said occurrence and loss above described, *to the extent of the payment above made . . ."* (emphasis added) The insured further agreed "the Insurer may enforce the same" for the benefit of the insurer in its own name or in the name of the insured. The motion to dismiss was sustained and the plaintiff appeals. His point relied on is that the trial court erred for the reason the proof of loss was not an assignment of the plaintiff's entire claim for damages.

Upon payment of all or part of the insured's damages, the interest of a collision insurer in the insured's cause of action against a tort-feasor is most often established by subrogation or assignment. While subrogation is frequently equated with assignment and has been referred to as assignment by operation of law, the two methods are, at least for some purposes, distinct.[1] Subrogation may arise by operation of law or by agreement, the distinction and relationship between the two not being pertinent to this decision. Assignment results from agreement. When an insurer acquires such an interest in the cause of action a determination of which party or parties may, or must, prosecute that cause

of action has been found to be dependent upon many factors, including the extent of the insurer's interest, how that interest was derived, and the interrelationship between the real party in interest statute and the rule against splitting a cause of action. It is not unexpected that in making such determination the state and federal courts have reached differing conclusions. See Annot., Insurer-Parties-Partial Loss, 13 A.L.R.3d 140 (1967); Annot., Insurer-Parties-Total Loss, 13 A.L.R.3d 229.

In the Missouri courts it has been established that such a determination hinges upon whether the interest of the insurer is derived by subrogation or assignment of the cause of action.[2] If the interest of the insurer is derived by subrogation, the action must be brought by, or at least in the name of, the insured. *State Farm Mutual Automobile Ins. Co. v. Jessee,* 523 S.W.2d 832 (Mo.App.1975); *Alsup v. Green,* 517 S.W.2d 151 (Mo.App.1974). This is true even though the insurer is subrogated to the entire cause of action. *Hayes v. Jenkins,* 337 S.W.2d 259 (Mo.App.1960). On the other hand, if the entire cause of action, as distinguished from the proceeds,[3] is assigned to the insurer, the action must be brought by the insurer. *General Exchange Ins. Corporation v. Young,* 357 Mo. 1099, 212 S.W.2d 396 (1948); *Hoorman v. White,* 349 S.W.2d 379 (Mo.App.1961). This is true even though the insurer has paid only part of the loss and is subrogated to the extent of the payment. *Steele v. Goosen,* 329 S.W.2d 703 (Mo.1959). It is on this basis the defendant supports the action of the trial court and equates the proof of loss in this case with the instrument in *Hoorman.*

However, the instrument in *Hoorman* serves to point up the essential nature of the instrument in this case. In *Hoorman*

1. *Kroeker v. State Farm Mutual Automobile Ins. Co.,* 466 S.W.2d 105 (Mo.App.1971).

2. The cases are collected in *Alsup v. Green,* 517 S.W.2d 151 (Mo.App.1974).

3. *Truitt v. National Life & Accident Ins. Co.,* 236 Mo.App. 1036, 161 S.W.2d 683 (1942).

Also compare *State ex rel. Knight Oil Company v. Vardeman,* 409 S.W.2d 672 (Mo. banc 1966). For a case dealing with the interest of an insurer under a trust receipt see *Kroeker v. State Farm Mutual Automobile Ins. Co.,* supra, n. 1; under a loan agreement, *State ex rel. Bartlett and Company v. Kelso,* 499 S.W.2d 579 (Mo. App.1973).

the instrument read the insurer " 'is hereby subrogated to all claims and rights of action . . . to the amounts so paid and the undersigned *assigns* and sets over to the said company *all such claims* with the right to prosecute the said action or actions in the name of the assignor.' " *Hoorman v. White*, supra, 349 S.W.2d at 379. (emphasis added) In this case the instrument in substance reads: "The Insured hereby *assigns* . . . to the Insurer any and all claims or causes of action . . . *to the extent of the payment above made* . . . ." (emphasis added) The *Hoorman* instrument limited the extent of subrogation. The proof of loss in this case limits the assignment.

While no cases have been cited to this court, and undoubtedly none were cited to the trial court, instruments such as the one in question have consistently been construed to constitute partial assignments of the cause of action. *State ex rel. Home Service Oil Company v. Hess*, 485 S.W.2d 616 (Mo.App.1972); *Liebstadter v. Brooks*, 421 S.W.2d 547 (Mo.App.1967); *Meyer Jewelry Co. v. Professional Building Co.*, 307 S.W.2d 517 (Mo.App.1957); *Swift & Co. v. Wabash R. Co.*, 149 Mo.App. 526, 131 S.W. 124 (1910); *National Garment Co. v. New York, C. & St. L. R. Co.*, 173 F.2d 32 (8th Cir. 1949). Those Missouri cases involved partial assignments to multiple insurers and concluded the right to prosecute the cause of action against the tort-feasor was in the insured. The later cases rely upon *Swift* which is premised upon the following observation concerning the effect of a partial assignment: "The assignments before us— the written as well as the equitable— whether considered singly or conjointly, had no other effect than to convey to each assurer an equitable interest in plaintiff's cause of action against defendant. The legal title remained in plaintiff corporation in the name of which the action could be prosecuted." *Swift & Co. v. Wabash R. Co.*, supra, 149 Mo.App. at 533–534, 131 S.W. at 126. Under these authorities the dismissal must be reversed.

However, lest the import of this opinion might be misconstrued, the result reached need not be based upon those cases. The rationale that a partial assignment of an assignable cause of action conveys nothing but an equitable interest is not consistent with current trends.[4] The same is true of the uncited doctrine, said to be unique to this state, "in Missouri, contrary to the prevailing rule, no suit may be maintained against a debtor on a partial assignment without his consent either at law or in equity." *Howard Undertaking Co. v. Fidelity Life Ass'n.*, 59 S.W.2d 746, 748 (Mo.App. 1933).

The more recent doctrine has been summarized:

Under modern practice, where procedural distinctions between law and equity have been abolished, and legal and equitable remedies are secured by the same form of action, it is generally conceded that if part of an obligation or demand has been assigned, the assignee can maintain an action to recover his share by joining the assignor as plaintiff, or, if he will not join, by making him a defendant, so that the whole controversy may be settled in one suit. 6 Am.Jur.2d Assignments § 132, pp. 313–314.

This doctrine was recognized by this court in saying:

It could assign its interest in the contract to as many different parties as it saw fit and those parties could hold as tenants in common or as joint tenants. Such action on the part of the corporation, acting without the assent of defendants, could not, however, split the cause of action and authorize a multitude of suits where only one right of action had previously existed. (cites omitted)

4. In speaking of the reasoning in *Subscribers at Casualty Reciprocal Exchange v. Kansas City Public Service Company*, 230 Mo.App. 468, 91 S.W.2d 227 (1936), which in part was based upon the ineffectiveness of a partial assignment, the Supreme Court said: "We do not approve of the court's reasoning in that case . . . ." *General Exchange Ins. Corporation v. Young*, 357 Mo. 1099, 212 S.W.2d 396, 399 (Mo.1948).

It is our conclusion that plaintiff could not maintain this action without joining the other assignees of the contract as plaintiffs with him, or, if they would not join as plaintiffs, he should have made them defendants as the statute cited provides may be done. *Hoppock v. Gaines*, 284 S.W. 191, 192–193 (Mo.App.1926).

 A typical expression of the recent doctrine is found in a California case.

At common law, a partial assignee had no legal standing to sue; the underlying rationale was that the original creditor could not split his cause of action and sue the debtor in two actions, and he could not bring about the same result by assigning part of the claim to another and subjecting the debtor to two suits by different plaintiffs. Enforcement of a partial assignment of a claim was permitted in equity, however, by the process of requiring joinder of all interested parties; i. e., the assignor and all partial assignees . . . 'under the codes, which have merged legal and equitable actions and adopted the equity procedure of joinder, there is no longer any procedural obstacle to enforcement of the partial assignment. The plaintiff partial assignee may sue by joining the partial assignor . . . .' *Cain v. State Farm Mutual Automobile Insurance Co.*, 47 Cal.App.3d 783, 794–795, 121 Cal.Rptr. 200, 207 (1975).[5]

However, even following the more recent doctrine, the dismissal cannot be sustained. Assuming the legal title to the cause of action is vested in the insured and insurer, the plaintiff insured is a real party in interest and his failure to join the insurer, as plaintiff or defendant, constitutes a nonjoinder. While V.A.M.R. Civil Rule 52.06 does not prohibit dismissal for nonjoinder, "[w]hen the issue is whether the suit should proceed or be dismissed for failure to join a person as a party (nonjoinder), Rule 52.04 is the procedural rule which controls the matter." *Kingsley v. Burack*, 536 S.W.2d 7, 10 (Mo. banc 1976). That determination must be made in accordance with that case. *State ex rel. Emcasco Ins. Co. v. Rush*, 546 S.W.2d 188 (Mo.App.1977); *Reliance Insurance Co. v. Wisconsin Natural Gas Co.*, 60 F.R.D. 429 (D.C.Wis.1973); 6 Wright & Miller Federal Practice & Procedure, § 1545, p. 654–656; 3A Moore's Federal Practice, § 17.09, pp. 17–92–94. The judgment is reversed and cause remanded.

BILLINGS, P. J., and HOGAN, J., concur.

---

5. Also see *Blake v. Weiden*, 291 N.Y. 134, 51 N.E.2d 677 (1943); *Ridgeland Box Mfg. Co. v. Sinclair Refining Co.*, 216 S.C. 20, 56 S.E.2d 585 (1949); *Holibaugh v. Cox*, 167 Ohio St. 340, 148 N.E.2d 677 (1958); *City of Claxton v. Claxton Poultry Company, Inc.*, 134 Ga.App. 679, 215 S.E.2d 718 (1975); *Friedman v. Martini Tile & Terrazzo Company*, 298 S.W.2d 221 (Tex.Civ. App.1957); *Finance Corporation v. Modern Materials Company*, 312 P.2d 455 (Okl.1952); *Hardware Deal. Mut. Fire Ins. Co. v. Farmers Ins. Exch.*, 4 Wash.App. 49, 480 P.2d 226 (1971); *Public Service Company of Oklahoma v. Black & Veatch*, 467 F.2d 1143 (10th Cir. 1972). Where the insured brought an action for his uninsured loss, one insurer intervened without objection and a separate action by a second insurer was consolidated upon motion of the defendant, separate recoveries were approved and the court said: "But that problem does not arise here, for Laclede is not confronted with a multiplicity of suits as the LoBellos and the insurance subrogees have been brought together in a single action and at the request of Laclede. Therefore, Hanover's and Protective's participation in the case for the recovery of the insurance payments each made to the LoBellos was not error and the real party in interest restriction which Laclede argues would permit action only by the LoBellos is not applicable." *LoBello v. Laclede Gas Co.*, 517 S.W.2d 474, 477 (Mo.App.1974). For a similar decision see *Helderman v. Von Hoffman Corp.*, 260 S.W.2d 333 (Mo.App.1953). Under an assignment for collateral security the assignor and assignee are interested parties. *Cantor v. Union Mut. Life Ins. Co.*, 547 S.W.2d 220 (Mo.App.1977).