OPINION OF THE COURT
Jack M. Battaglia, J.
In this mortgage foreclosure action commenced on July 2, 2009, plaintiff The Bank of New York Mellon formerly known as The Bank of New York moves for an order, among other things, granting summary judgment on its complaint as against defendants Carl Deane and Jesse Deane, the mortgagors of the subject property; judgment by default against non-appearing defendants Mortgage Electronic Registration Systems, Inc. as nominee for RBC Mortgage Company, New York City Environ *496 mental Control Board, New York City Transit Adjudication Bureau, New York Merchants Protective Co., Inc., and John Doe; and issuing an order of reference.
“In order to establish prima facie entitlement to summary judgment in a foreclosure action, a plaintiff must submit the mortgage and unpaid note, along with evidence of default.” (Capstone Bus. Credit, LLC v Imperia Family Realty, LLC, 70 AD3d 882, 883 [2d Dept 2010]; see also GRP Loan, LLC v Taylor, 95 AD3d 1172, 1173-1174 [2d Dept 2012]; US Bank Natl. Assn. TR U/S 6/01/98 [Home Equity Loan Trust 1998-2] v Alvarez, 49 AD3d 711, 711 [2d Dept 2008].) Plaintiff “must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact.” (See Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986].) Plaintiff must tender “evidentiary proof in admissible form.” (See Zuckerman v City of New York, 49 NY2d 557, 562 [1980].)
“Where the issue of standing is raised by a defendant, a plaintiff must prove its standing in order to be entitled to relief.” (GRP Loan, LLC v Taylor, 95 AD3d at 1173.) Here, in their verified answer, defendants Carl Deane and Jesse Deane (the Deane defendants) allege as a second affirmative defense that “Plaintiffs [sic] . . . lack standing and capacity to sue and are unknown creditors to Defendants” {see verified answer 11 5).
“On any application for judgment by default, the applicant shall file proof of service of the summons and the complaint, . . . and proof of the facts constituting the claim, the default and the amount due.” (CPLR 3215 [f].) The proof must establish a prima facie case. (See Walley v Leatherstocking Healthcare, LLC, 79 AD3d 1236, 1238 [3d Dept 2010]; Green v Dolphy Constr. Co., 187 AD2d 635, 637 [2d Dept 1992]; Silberstein v Presbyterian Hosp. in City of N.Y., 96 AD2d 1096, 1096 [2d Dept 1983]; see also Woodson v Mendon Leasing Corp., 100 NY2d 62, 71 [2003] [“viable cause of action”].) “[T]here is no mandatory ministerial duty to enter a default judgment against a defaulting party.” (Superior Dental Care, P.C. v Hoffman, 81 AD3d 632, 634 [2d Dept 2011] [internal quotation marks and citation omitted].)
Where a defendant fails to answer the complaint and does not make a pre-answer motion to dismiss the complaint, the defendant is deemed to have “waived the defense of lack of standing.” (See HSBC Bank USA, N.A. v Taker, 104 AD3d 815, 817 [2d Dept 2013].)
*497 In the context of a mortgage foreclosure action, “standing” must mean entitlement to enforce the note and mortgage. One might question whether a plaintiff who is not entitled to enforce the note and mortgage should be able to obtain a judgment by default, whereas that plaintiff would be required to make a prima facie showing on its entitlement to enforce where it seeks summary judgment against a defendant who merely raises the issue. That is, however, the current law in the Second Department.
As recently summarized by the Second Department:
“In order to commence a foreclosure action* the plaintiff must have a legal or equitable interest in the subject mortgage ... A plaintiff has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note prior to commencement of the action with the filing of the complaint . . . Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident.” (GRP Loan, LLC v Taylor, 95 AD3d at 1173 [internal quotation marks and citations omitted; emphasis added].)
“As a general matter, once a promissory note is tendered to and accepted by an assignee, the mortgage passes as an incident to the note.” (Bank of N.Y. v Silverberg, 86 AD3d 274, 280 [2d Dept 2011].) “By contrast, ‘a transfer of the mortgage without the debt is a nullity, and no interest is acquired by it.’ ” (Id., quoting Merritt v Bartholick, 36 NY 44, 45 [1867].) “[A]n assignment of a note and mortgage need not be in writing and can be effectuated by physical delivery.” (Id.)
This action rests on an adjustable rate note dated April 27, 2005 in the principal amount of $340,000, executed by the Deane defendants in favor of RBC Mortgage Company, and, as security for payment of the note, a mortgage of the same date on real property at 9315 Schenck Street, Brooklyn. The note was specially indorsed, without a date, to the order of JPMorgan Chase Bank, N.A., as trustee. The mortgage identified Mortgage Electronic Registration Systems, Inc. (MERS) “acting solely as a nominee for Lender and Lender’s successors and assigns,” and as “Mortgagee of Record.”
In its complaint, plaintiff The Bank of New York Mellon alleges that it is “the owner and holder of the note and mortgage *498 being foreclosed” (see complaint, first), and that the mortgage was assigned to it “by assignment dated the 17th day of June, 2009” (see id., third). Plaintiff submits with this motion a copy of an assignment of mortgage dated June 17, 2009 from MERS to plaintiff, transferring the mortgage given by the Deane defendants to RBC Mortgage Company. The assignment of mortgage does not purport to assign the underlying note, nor is there any showing that MERS would have had the power or authority to do so. (See Bank of N.Y. v Silverberg, 86 AD3d at 281-282.) There is no evidence of “MERS’s right to, or possession of, the actual underlying promissory note” (see id. at 279), and, if based only upon the assignment of mortgage, plaintiff would lack standing to maintain this foreclosure action (see id. at 283).
Plaintiff also submits however excerpts from a pooling and servicing agreement dated as of July 1, 2005 among Structured Asset Mortgage Investments II Inc. as “Depositor,” JP Morgan Chase, National Association as “Trustee,” Wells Fargo Bank, National Association as “Master Servicer” and “Securities Administrator,” and EMC Mortgage Corporation as “Seller”; a copy of an agreement of resignation and assumption dated as of October 1, 2006 by and among JPMorgan Chase, National Association as “Resigning Trustee” and The Bank of New York as “Successor Trustee”; and an affidavit of Angela Frye, described as
“a Vice President Loan Documentation for Wells Fargo Bank, N.A. . . . d/b/a Americas Servicing Company, as servicing agent for The Bank of New York Mellon, fka The Bank of New York as Successor in interest to JP Morgan Chase Bank NA as Trustee for Structured Asset Mortgage Investments II Inc. Bear Sterns ALT-A Trust 2005-7, Mortgage Pass-Through Certificates, Series 2005-7.”
Neither the affidavit of Angela Frye, nor the affirmation of counsel, nor counsel’s memorandum of law, attempts to describe the transactions purportedly reflected in the submitted agreements, nor does any of them cite to specific language or provisions that purportedly have the legal effects ascribed to them in conclusory fashion. Indeed, the cursory treatment of the standing question in the memorandum of law evidences a misunderstanding of the general law of negotiable instruments in its equation of the status as “holder” to mere possession of the instrument (see plaintiffs mem of law in support of its mo *499 tian for summary judgment and to amend the caption nunc pro tune [plaintiffs mem] at 7-8).
The core of the law of negotiable instruments is found in article 3 of the Uniform Commercial Code, adopted in New York in 1962. In 1990, the National Conference of Commissioners on Uniform State Laws proposed a revision of article 3 that has been adopted in all of the states except New York. Amendments to revised article 3 were proposed in 2002, and have been adopted in 10 states. The provisions of these later versions of article 3 (Revised UCC) can be helpful in interpreting and applying the former version, still effective in New York. (See Lawyers’ Fund for Client Protection of State of N.Y. v Bank Leumi Trust Co. of N.Y., 94 NY2d 398, 406 [2000]; Gabriel v Kost, 2001 NY Slip Op 40288[U] [Civ Ct, Kings County 2001].)
New York’s version of article 3 does not in terms define “standing” or otherwise set out those persons who are entitled to enforce a “note” (see UCC 3-104 [2] [d]) or a “draft” (see UCC 3-104 [2] [a]), the two most common forms of negotiable instruments. Revised UCC article 3 sets out those persons entitled to enforce an instrument, including, in the first instance, “the holder of the instrument” (see Revised UCC 3-301 [i]), and “a nonholder in possession of the instrument who has the rights of a holder” (see Revised UCC 3-301 [ii]).
The concept of a “holder” and the related concept of “negotiation” are central to one of the unique features of the law of negotiable instruments, i.e., the concept of “holder in due course” (see UCC 3-302) and the immunity from claims and defenses that comes with that status (see UCC 3-305). “The holder of an instrument . . . may . . . enforce payment in his own name.” (See UCC 3-301.)
A “holder” is “a person who is in possession of. . .an instrument . . . issued or indorsed to him or to his order or to bearer or in blank.” (See UCC 1-201 [20].) “Negotiation is the transfer of an instrument in such form that the transferee becomes a holder.” (UCC 3-202 [1].) The mechanism of negotiation depends upon the form in which the instrument was originally made or drawn, or in which it has been subsequently indorsed (see UCC 3-204). Thus, “[i]f the instrument is payable to order it is negotiated by delivery with any necessary indorsement; if payable to bearer it is negotiated by delivery.” (UCC 3-202 [1].)
Here, the note when made was payable to the order of RBC Mortgage Company (see UCC 3-110 [1]), and was specially indorsed to JP Morgan Chase Bank, N.A. as trustee (see UCC *500 3-204 [1]). Assuming that the note was also delivered to JP Morgan Chase, the note was negotiated to JP Morgan Chase, which became its holder and entitled to enforce it. “Delivery” of a negotiable instrument “means voluntary transfer of possession.” (See UCC 1-201 [14].)
“Any instrument specially indorsed becomes payable to the order of the special indorsee and may be further negotiated only by his indorsement.” (UCC 3-204 [1].) Assuming, therefore, delivery to JP Morgan Chase Bank, N.A., further negotiation, and conferring of status as holder of the note, required the indorsement of JP Morgan Chase Bank, N.A., either to the order of another special indorsee, or in blank, with no particular indorsee, in the latter case transforming the note to an instrument payable to bearer that could be further negotiated “by delivery alone” (see UCC 3-204 [2]).
It is clear that plaintiff The Bank of New York Mellon has not established that it is the holder of the note. There is no indorsement on the note by JP Morgan Chase Bank, N.A., and plaintiff submits no evidence that the note was ever delivered by the indorser, RBC Mortgage Company, to the indorsee, so that it could be further indorsed and negotiated by the indorsee.
It is also clear, however, that a person need not be the holder of an instrument in order to be a person entitled to enforce it. As noted above, an instrument may also be enforced by “a non-holder in possession . . . who has the rights of a holder” (see Revised UCC 3-301 [ii]). “Transfer of an instrument vests in the transferee such rights as the transferor has therein.” (UCC 3-201 [1].)
New York’s article 3 does not contain a definition of “transfer.” Revised UCC 3-203 (a) provides, “An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.” “The right to enforce an instrument and ownership of the instrument are two different concepts,” with ownership “determined by principles of the law of property, independent of Article 3.” (See Revised UCC 3-203, Comment 1.) Assuming a transfer “for value” (see UCC 3-303), if the instrument is not then payable to bearer, the transferee has “the specifically enforceable right to have the unqualified indorsement of the transferor,” but “[negotiation takes effect only when the indorsement is made and until that time there is no presumption that the transferee is the owner.” (See UCC 3-201 [3]; see also UCC 3-307 [2].)
*501 Language in recent Second Department decisions creates some question as to whether delivery of the instrument by the holder, and, therefore, possession by the putative transferee, is necessary to entitle the putative transferee to claim the rights of the holder, including entitlement to enforce the instrument. As quoted above, it is said that “[a] plaintiff has standing where it is . . . the holder or assignee of the underlying note prior to commencement of the action” (see GRP Loan, LLC v Taylor, 95 AD3d at 1173 [emphasis added]). Without a definition of transfer, article 3 does not expressly address the question. Under revised article 3, the only occasions for allowing a person not in possession of an instrument to enforce it are where the instrument has been lost, destroyed or stolen, or where the instrument has been paid by mistake and the payment is recovered. (See Revised UCC 3-301 [iii]; 3-309, 3-418 [d].)
Further complicating the issue of entitlement to enforce an instrument are the statements, quoted above, that “[ejither a written assignment of the underlying note or the physical delivery of the note ... is sufficient to transfer the obligation” (see GRP Loan, LLC v Taylor, 95 AD3d at 1173 [internal quotation marks and citation omitted]); and that “an assignment of a note . . . can be effectuated by physical delivery” (see Bank of N.Y. v Silverberg, 86 AD3d at 280).
New York’s Uniform Commercial Code speaks of “transfer” of a negotiable instrument that is not a negotiation (see UCC 3-201), as did the Negotiable Instruments Law on which it was based (see Negotiable Instruments Law § 79, quoted in Meuer v Phenix Natl. Bank, 94 App Div 331, 334-335 [1st Dept 1904], affd 183 NY 511 [1905]), while New York courts have spoken primarily in terms of “assignment,” as did, apparently, the common-law “law-merchant.” And so, “[w]hen ... [a negotiable ] instrument is transferred but without an indorsement, it is treated as a chose in action assigned to the purchaser [, who] . . . acquires all the title of the assignor and may maintain an action thereon in his own name” (see Goshen Natl. Bank v Bingham, 118 NY 349, 355 [1890]; see also Wangner v Grimm, 169 NY 421, 428 [1902]). Indeed, quotation of the code, or even its citation, has virtually disappeared from the case law on this part of negotiable instruments law, at least where addressed in mortgage foreclosure actions.
Perhaps as a result, the meaning of terms that have particular effect in negotiable instruments law can become blurred. For example, in a recent opinion the Second Department held that *502 the plaintiff “failed to establish how or when it became the lawful holder of the note either by delivery or valid assignment.” (See Citimortgage, Inc. v Stosel, 89 AD3d 887, 888 [2d Dept 2011]; see also Deutsche Bank Natl. Trust Co. v Rivas, 95 AD3d 1061 [2d Dept 2012]; Morrison v Schmeman, 166 App Div 264, 266 [1st Dept 1915] [“plaintiff holds the bond and mortgage by a written assignment”].) Whatever the rights of a person to enforce an instrument by reason of delivery or assignment, a person is not a “holder” by reason of delivery or assignment alone, unless delivery is made of a bearer instrument.
Nonetheless, there are numerous recent Second Department opinions in mortgage foreclosure actions stating that a plaintiff has standing where, prior to commencement of the action, it is “the holder or assignee of the underlying note” and/or there has been “a written assignment of the underlying note or the physical delivery of the note.” (See e.g. Homecomings Fin., LLC v Guldi, 108 AD3d 506 [2d Dept, July 3, 2013]; Deutsche Bank Natl. Trust Co. v Whalen, 107 AD3d 931 [2d Dept, June 26, 2013]; Deutsche Bank Natl. Trust Co. v Spanos, 102 AD3d 909, 911-912 [2d Dept 2013]; Deutsche Bank Natl. Trust Co. v Haller, 100 AD3d 680, 682 [2d Dept 2012]; GRP Loan, LLC v Taylor, 95 AD3d at 1173; HSBC Bank USA v Hernandez, 92 AD3d 843, 843-844 [2d Dept 2012]; Deutsche Bank Natl. Trust Co. v Barnett, 88 AD3d 636, 637 [2d Dept 2011]; Citimortgage, Inc. v Stosel, 89 AD3d at 888; Bank of N.Y. v Silverberg, 86 AD3d at 281; Aurora Loan Servs., LLC v Weisblum, 85 AD3d 95, 108 [2d Dept 2011]; U.S. Bank, N.A. v Collymore, 68 AD3d 752, 753-754 [2d Dept 2009]; see also LaSalle Bank Natl. Assn. v Ahearn, 59 AD3d 911, 912 [3d Dept 2009].)
If the plaintiff asserts standing based upon a written assignment executed after the commencement of the action, the plaintiff must also prove physical delivery of the note before commencement. (See Wells Fargo Bank, N.A. v Marchione, 69 AD3d 204, 210 [2d Dept 2009]; LaSalle Bank Natl. Assn. v Ahearn, 59 AD3d at 912.) Indeed, where the plaintiff “establishes] its standing as the holder of the note and mortgage by physical delivery prior to commencement of the action,” it is unnecessary to “address the validity of [a] subsequently executed document assigning the mortgage and note.” (See Deutsche Bank Natl. Trust Co. v Whalen, 107 AD3d at 932.) Such proof must consist of “factual details as to the physical delivery of the note.” (See Homecomings Fin., LLC v Guldi, 108 AD3d at 509; Deutsche Bank Natl. Trust Co. v Haller, 100 AD3d at *503 682; HSBC Bank USA v Hernandez, 92 AD3d at 844; Deutsche Bank Natl. Trust Co. v Barnett, 88 AD3d at 638 [“factual details concerning when the plaintiff received physical possession of the note”]; see also Aurora Loan Servs., LLC v Weisblum, 85 AD3d at 109; U.S. Bank, N.A. v Collymore, 68 AD3d at 754.)
Physical delivery of a note is sufficient as a transfer “without a written instrument of assignment” (see Flyer v Sullivan, 284 App Div 697, 699 [1st Dept 1954]), or, indeed “without any written words of transfer at all” (see Blake v Weiden, 291 NY 134, 139 [1943]). But, again, “delivery” requires “voluntary transfer of possession” (see UCC 1-201 [14]). Moreover, under revised article 3, “An instrument is transferred when it is delivered . . . for the purpose of giving to the person receiving delivery the right to enforce the instrument” (see Revised UCC 3-203 [a]). Although the qualification is not found in New York’s article 3, which contains no definition of “transfer,” this court has seen nothing that would suggest that such a purpose need not accompany the “voluntary transfer of possession” (see UCC 1-201 [14]). When there is no assignment or other “written words of transfer” (see Blake v Weiden, 291 NY at 139), evidence of such purpose might easily be found in the nature and structure of the overall or related transaction(s) between the transferor and the transferee.
Perhaps a more difficult question is whether an assignment alone, i.e., without possession of the note, is sufficient to constitute a “transfer,” so as to allow the transferee to enforce it. As just noted, revised article 3 would require delivery of the note (see Revised UCC 3-203 [a]), and, as noted above, would allow enforcement of a note without possession only when the note is lost, stolen, or destroyed, or where it has been paid (see Revised UCC 3-301 [in]). Recent Second Department opinions can be read as holding that the assignment alone, without possession, is sufficient. (See GRP Loan LLC v Taylor, 95 AD3d at 1174; Deutsche Bank Trust Co. Ams. v Codio, 94 AD3d 1040, 1041 [2d Dept 2012].)
This court is aware of only one appellate decision that has recognized an assignee’s entitlement to enforce a note while expressly recognizing continued possession of the note by the assignor. In that case, the plaintiff had been assigned only one third of the assignor’s interest under the note; the plaintiff was permitted to sue for his interest because he had joined his “co-assignees” in the action. (See Kronman v Palm Mgt. Assoc. Ltd. Partnership, 276 AD2d 338, 338-339 [1st Dept 2000].)
*504 Except, perhaps, where there is a common agent, it is not possible for more than one person to have possession of an instrument, which would explain why only an entire instrument can be negotiated (see UCC 3-202 [3]; Hewett v Marine Midland Bank of Southeastern N.Y., 86 AD2d 263, 267 [2d Dept 1982]). Nonetheless, the result in the “co-assignees” case is supported by Blake v Weiden (291 NY 134, 138 [1943]), although, in that case, the Court of Appeals found “at least a constructive delivery” to the three indorsees (see id. at 139).
Requiring possession of the note even where there is an assignment would serve the important purpose of protecting the maker of the note who pays an assignee from a subsequent claim by a holder in due course (see UCC 3-305), against whom a defense of discharge upon payment is not available (see UCC 3-602, 3-603; see also National Bank of Bay Ridge in City of N.Y. v Albers, 244 App Div 127, 128 [2d Dept 1935]; Morrison v Schmeman, 166 App Div 264, 266 [1915]). To the contrary, allowing recovery on an assignment without possession would be inconsistent with current article 3 protections that are imposed when enforcement is sought of a lost, destroyed or stolen instrument (see UCC 3-804; Sills v Waheed Enters., 253 AD2d 351, 352 [1st Dept 1998]).
The question is somewhat addressed in the official comment to revised article 3, section 3-203; Transfer of Instrument; Rights Acquired By Transfer:
“The right to enforce an instrument and ownership of the instrument are two different concepts . . . Ownership rights in instruments may be determined by principles of the law of property, independent of Article 3, which do not depend upon whether the instrument was transferred under Section 3-203. Moreover, a person who has an ownership right in an instrument might not be a person entitled to enforce the instrument. For example, suppose X is the owner and holder of an instrument payable to X. X sells the instrument to Y but is unable to deliver immediate possession to Y. Instead, X signs a document conveying all of X’s right, title, and interest in the instrument to Y. Although the document may be effective to give Y a claim to ownership of the instrument, Y is not a person entitled to enforce the instrument until Y obtains possession of the instrument. No transfer of the instrument occurs under Section 3-203(a) until it is delivered to Y.” (Revised UCC 3-203, Comment 1.)
*505 To allow an assignee to sue without possession of the note, therefore, would be inconsistent with revised article 3, and put New York out of step with the 49 states that have adopted the revision, including, in particular, a conception of “transfer” as “deliver[y] by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument” (see Revised UCC 3-203 [a]). That misstep, however, if such it is, has apparently already been taken. The case law quoted and cited above clearly speaks, in the disjunctive, of standing obtained by “assignment” or “physical delivery” of the note before commencement of the action; if “assignment” must be accompanied by possession of the note, then it seems little different from “physical delivery.” Indeed, where possession before commencement could be established, with a purpose to allow the transferee to enforce the instrument, the assignment would appear superfluous in most cases. There is no evidence that the Second Department has been using the terms synonymously.
One might reconcile these conflicting principles and policies to an extent by taking the Second Department at its words, and finding “standing” to commence and prosecute an action to enforce a note (and related mortgage) with proof only of an assignment before commencement, but to require surrender of the note at judgment, either after trial or accelerated by summary judgment (see CPLR 3212) or judgment by default (see CPLR 3215). Pending further clarification from the Second Department, this court will adopt that approach. (See National Bank of Bay Ridge in City of N.Y. v Albers, 244 App Div at 128.)
Finally as to the requirements for “standing,” under New York’s article 3, “Transfer of an instrument vests in the transferee such rights as the transferor has therein” (see UCC 3-201 [1]; see also Revised UCC 3-203 [b]). The common-law “assignment” framework utilized by New York courts is consistent. (See Wangner v Grimm, 169 NY 421, 428 [1902]; Goshen Natl. Bank v Bingham, 118 NY 349, 354 [1890]; Meuer v Phenix Natl. Bank, 94 App Div 331, 334-339 [1904].) “It is elementary ancient law that an assignee never stands in any better position than his assignor.” (Matter of International Ribbon Mills [Arjan Ribbons], 36 NY2d 121, 126 [1975]; see also New York & Presbyt. Hosp. v Country-Wide Ins. Co., 17 NY3d 586, 592 [2011].)
There is nothing in recent Second Department mortgage foreclosure case law that changes this. (See Bank of N.Y. v Silverberg, 86 AD3d at 282.) Where a plaintiff, therefore, is not a *506 holder of the note, but establishes “standing” pursuant to transfer, either by assignment or delivery, the plaintiff must show that its transferor had the right to enforce the note before transfer.
In sum, in the usual case, a plaintiff has “standing” to prosecute a mortgage foreclosure action where, at the time the action is commenced: (1) the plaintiff is the holder of the note (see UCC 1-201 [20]); or (2) the plaintiff has possession of the note by delivery (see UCC 1-201 [14]), from a person entitled to enforce it, for the purpose of giving the plaintiff the right to enforce it; or (3) the plaintiff has been assigned the note, by a person entitled to enforce it, for the purpose of giving the plaintiff the right to collect the debt evidenced by the note, and the plaintiff tenders the note at the time of any judgment.
Here, plaintiff The Bank of New York Mellon has not established prima facie with evidence in admissible form either assignment or delivery of the note from a holder, sufficient to allow plaintiff to enforce the note and related mortgage. The only “evidence” of assignment of the note to plaintiff are excerpts from a pooling and servicing agreement consisting of a title page, a table of provisions and exhibits, and 11 pages of provisions, indicating a document of more than 76 pages. There are no signature pages, and, therefore, no authentication of the document by acknowledged signatures (see Prince, Richardson on Evidence § 9-101 [Farrell 11th ed]; Stein v Doukas, 98 AD3d 1026, 1029 [2d Dept 2012]; NYCTL 1998-2 Trust v Santiago, 30 AD3d 572, 573 [2d Dept 2006] [“A private document offered to prove the existence of a valid contract cannot be admitted into evidence unless its authenticity and genuineness are first properly established”]).
Even ignoring the evidentiary threshold, the provision headed “Conveyance of Mortgage Loans to Trustee” states that “[t]he Depositor . . . sells, transfers and assigns to the Trust without recourse all its right, title and interest in and to . . . the Mortgage Loans identified in the Mortgage Loan Schedule,” but no mortgage loan schedule is provided, and, in any event, the “Depositor” is Structured Asset Mortgage Investments II Inc., which is not shown to have had any power or authority to transfer the subject note.
The agreement of resolution and assumption between JP Morgan Chase Bank, National Association and The Bank of New York provides that JP Morgan as resigning trustee “assigns, transfers, delivers and confirms to [The Bank of New *507 York as] Successor Trustee all right, title and interest in and to each of the Agreements” listed on a schedule A and “all rights, powers and trusts of the Resigning Trustee, as trustee or otherwise, under each of the Agreements,” but nowhere on schedule A is the subject note or mortgage listed, nor is there any showing that any listed agreement transferred the note from JP Morgan to plaintiff. (Also, only one of the two signatures to the agreement of resignation and assumption is acknowledged.)
The affidavit of Angela Frye states that “[t]o memorialize the transfer of the mortgage loan to Plaintiff, as successor trustee, a written assignment . . . was subsequently executed on or about June 17, 2009” (see IT 12), but, as stated above, the assignment of mortgage to plaintiff by MERS, even if effective, says nothing about the note, and a transfer of a mortgage does not carry the underlying note (see Bank of N.Y. v Silverberg, 86 AD3d at 280).
As to delivery and possession, the affidavit of Angela Frye states that
“Wells Fargo’s regularly maintained records . . . reflect that both the Mortgage and Note were physically delivered to Wells Fargo . . . prior to commencement of this action . . . [and] further reflect that Wells Fargo . . . was in physical possession of the Note and Mortgage at the time this action was commenced,” but also states that “Plaintiff is in possession of the Promissory Note, . . . duly indorsed to JP Morgan Chase Bank, NA as Trustee” (see II11).
There are no details as to the delivery to Wells Fargo, and, if there was a subsequent delivery to plaintiff, which would explain the apparent inconsistency, it is not described.
Moreover, the affiant, Angela Frye, does not assert any personal knowledge of delivery to, or possession by, either Wells Fargo or plaintiff. She does not attach or describe any of Wells Fargo’s “regularly maintained records” on which she relies, nor render them admissible as evidence. (See JP Morgan Chase Bank, N.A. v RADS Group, Inc., 88 AD 3d 766, 767 [2d Dept 2011]; HSBC Bank USA, N.A. v Betts, 67 AD3d 735, 736 [2d Dept 2009]; Unifund CCR Partners v Youngman, 89 AD3d 1377, 1377-1378 [4th Dept 2011]; Reiss v Roadhouse Rest., 70 AD3d 1021, 1024 [2d Dept 2010]; Lodato v Grey hawk N. Am., LLC, 39 AD3d 494, 495 [2d Dept 2007]; Whitfield v City of New York, 16 Misc 3d 1115[A], 2007 NY Slip Op 51433[U] [Sup Ct, Kings *508 County 2007]; affd 48 AD3d 798 [2d Dept 2008].) She does not state that the “regularly maintained records” show delivery of the note by JP Morgan Chase Bank (or anyone else), and, as noted above, there is no evidence that JP Morgan Chase Bank ever had possession of the note.
Although plaintiffs failure to establish prima facie that it is entitled to enforce the note and mortgage is enough to require denial of its motion for summary judgment against the Deane defendants (see Aurora Loan Servs., LLC v Weisblum, 85 AD3d at 108-110), denial of summary judgment is warranted on other grounds. The evidentiary deficiencies in the affidavit of Angela Frye, noted above with respect to delivery and possession of the note, infect as well other elements of plaintiffs claim, including default, acceleration of the loan, and the amount due.
Section 22 of the mortgage states that “Lender may require Immediate Payment in Full. . . only if all [specified] conditions are met,” including that “Lender sends ... a notice” that complies with the section. Giving the requisite notice of default is a condition precedent to acceleration, which is a requirement for seeking the equitable remedy of foreclosure. (See HSBC Mtge. Corp. [USA] v Gerber, 100 AD3d 966, 966-967 [2d Dept 2012]; Wells Fargo Bank, N.A. v Burke, 94 AD3d 980, 982-984 [2d Dept 2012]; GE Capital Mtge. Servs. v Mittelman, 238 AD2d 471, 471 [2d Dept 1997]; Moet II v McCarthy, 229 AD2d 876, 877 [3d Dept 1996]; Citimortgage, Inc. v Villatoro-Guzman, 2009 NY Slip Op 30983[U], *4 [Sup Ct, Suffolk County 2009]; Weitzel v Northern Golf, Inc., 18 Misc 3d 1134[A], 2008 NY Slip Op 50305[U], *4-6 [Sup Ct, Livingston County 2008]; QMB Holdings, LLC v Escava Bros., 11 Misc 3d 1060[A], 2006 NY Slip Op 50322[U], *3 [Sup Ct, Bronx County 2006]; Manufacturers & Traders Trust Co. v Korngold, 162 Misc 2d 669 [Sup Ct, Rockland County 1994].)
Plaintiff submits no proof of service of the December 21, 2008 notice of default. (See HSBC Mtge. Corp. [USA] v Gerber, 100 AD3d at 967; Norwest Bank Minn. v Sabloff, 297 AD2d 722, 723 [2d Dept 2002]; see also Nocella v Fort Dearborn Life Ins. Co. of N.Y., 99 AD3d 877, 878 [2d Dept 2012]; Lenchner v Chasin, 57 AD3d 623, 624 [2d Dept 2008]; Dune Deck Owners Corp. v Liggett, 34 AD3d 523, 524 [2d Dept 2006]; Residential Holding Corp. v Scottsdale Ins. Co., 286 AD2d 679, 680 [2d Dept 2001].) Further, the December 21, 2008 notice of default was given by an entity that is not the “Lender,” nor shown to have been identified to the mortgagors as authorized to act for the lender. *509 (See EMC Mtge. Corp. v Suarez, 49 AD3d 592, 593 [2d Dept 2008]; see also QMB Holdings, LLC v Escava Bros., 2006 NY Slip Op 50322[U] [2006], *3; Manufacturers & Traders Trust Co. v Korngold, 162 Misc 2d 669 [1994].)
To the extent that plaintiff’s motion seeks judgment by default against defendants other than the Deane defendants, as stated above plaintiff is not required to show its “standing.” The other noted deficiencies in plaintiffs showing as against the Deane defendants, however, preclude a finding that it has shown “proof of the facts constituting the claim” (see CPLR 3215 [f]) as against the other defendants to the extent that plaintiffs claims against those defendants depend upon foreclosure of the mortgage. Indeed, plaintiff makes no showing at all as against any of the other defendants.
As to “proof of the facts constituting the . . . default” (see id.), the respective affidavits of service fail to show proper service on defendant Mortgage Electronic Registration Systems, Inc. pursuant to CPLR 311 (a) (1), or upon defendants New York City Environmental Control Board or New York City Transit Adjudication Bureau pursuant to CPLR 311 (a) (2). Service upon defendant New York Merchants Protective Co., Inc. by service upon the Secretary of State pursuant to CPLR 311 (a) (1) and Business Corporation Law § 306 would be appropriate if defendant is a corporation, but no evidence is submitted that it is, and, in any event, there is no evidence of service of the additional notice required by CPLR 3215 (g).
Plaintiff also submits an affidavit of service upon Lynn Deane as “John Doe” by delivery to defendant “Carl Deane (Husband),” but the affidavit does not show the required mailing in accordance with CPLR 308 (2). In any event, the nonmilitary affidavit, included as part of the affidavit of service, is premature. (See Emigrant Mtge. Co., Inc. v Daniels, 2010 NY Slip Op 32720[U], *4-5 [Sup Ct, NY County 2010]; DLJ Mtge. Capital, Inc. v Lawrence, 2009 NY Slip Op 30554[U], *6 [Sup Ct, Nassau County 2009]; Sunset 3 Realty v Booth, 12 Misc 3d 1184[A], 2006 NY Slip Op 51441[U], *3 [Sup Ct, Suffolk County 2006, Sgroi, J.]; U.S. Bank NA v Coaxum, 2003 NY Slip Op 51384[U], *2-3 [Sup Ct, Westchester County 2003].)
The court notes that, although no defendant opposed plaintiffs motion, plaintiff is not relieved of its burden of making a sufficient showing for summary judgment (see Yonkers Ave. Dodge, Inc. v BZ Results, LLC, 95 AD3d 774, 774-775 [1st Dept 2012] [“an unopposed summary judgment motion will be denied *510 upon a movant’s failure to establish prima facie entitlement to summary judgment or where the evidence creates a question of fact”]); or for judgment by default (see Superior Dental Care, P.C. v Hoffman, 81 AD3d 632, 634 [2011] [“(T)here is no mandatory ministerial duty to enter a default judgment against a defaulting party” (internal quotation marks and citation omitted)]).
Finally, plaintiff moves to amend the caption (and, presumably, to amend the complaint to conform) in two respects: to substitute for the name of the plaintiff “The Bank of New York Mellon f/k/a The Bank of New York, as Trustee for Structured Asset Mortgage Investments II Inc. Bear Sterns ALT-A Trust, Mortgage Pass-Through Certificates Series 2005-7”; and to substitute “Lynn Deane” for defendant “John Doe.” As to the latter, counsel offers no explanation in either her affirmation or the memorandum of law, and the court will not speculate.
As to the identification of plaintiff, counsel explains that The Bank of New York Mellon “is the proper plaintiff in its capacity as Trustee for the Trust, which ... is the holder of the Deanes’ loan” (see plaintiffs mem at 15). But the affidavit of Angela Frye states, “Wells Fargo, as custodian for and on behalf of the Trust, is the current holder of the Mortgage loan, pursuant to the PSA” (see 1Í13). Since a person cannot be a “holder” of a negotiable instrument without possession, both statements cannot be literally accurate. It may be that plaintiff does not use “holder” as it is understood in the law of negotiable instruments, but the term and concept “holder” is too important to “standing” and a plaintiffs ability to maintain this action for there to be risk of further confusion.
Plaintiffs motion is denied, with leave to renew with papers that cure, or otherwise resolve, the deficiencies noted above.