21st Mtge. Corp. v Rudman (2022 NY Slip Op 00031)





21st Mtge. Corp. v Rudman


2022 NY Slip Op 00031


Decided on January 5, 2022


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 5, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
BETSY BARROS
FRANCESCA E. CONNOLLY
ANGELA G. IANNACCI, JJ.


2018-14789
 (Index No. 514754/15)

[*1]21st Mortgage Corporation, etc., respondent,
v
Mannes Rudman, et al., defendants, BP Hatzlucha Management Corp., appellant. Avi Rosenfeld, Lawrence, NY, for appellant.


Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C., Albany, NY (Michael J. Catalfimo of counsel), for respondent.



DECISION & ORDER
In an action to foreclose a mortgage, the defendant BP Hatzlucha Management Corp. appeals from an order and judgment of foreclosure and sale (one paper) of the Supreme Court, Kings County (Noach Dear, J.), dated October 31, 2018. The order and judgment of foreclosure and sale, upon an order of the same court dated June 5, 2017, inter alia, granting those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against that defendant and to appoint a referee to compute the amount due to the plaintiff, granted the plaintiff's motion to confirm the referee's report and for a judgment of foreclosure and sale, and directed the sale of the subject property.
ORDERED that the order and judgment of foreclosure and sale is affirmed, with costs.
On April 5, 2006, the defendant Mannes Rudman executed a note in favor of Option One Mortgage Corporation (hereinafter Option One) in the sum of $598,500. The note was secured by a mortgage encumbering certain real property located in Brooklyn. Option One executed an assignment dated April 13, 2006, but effective October 23, 2006 (hereinafter the 2006 assignment), in which it transferred the note and the mortgage to Residential Funding Company, LLC (hereinafter Residential). In the 2006 assignment, Option One acknowledged having endorsed the note.
By summons and complaint filed October 24, 2006, by Steven J. Baum, P.C., Option One commenced an action to foreclose the mortgage (hereinafter the 2006 action). In the complaint, verified by counsel, Option One alleged that it was the holder of the mortgage. Significantly, Option One neither alleged nor claimed that it was the holder of the note in any paragraph of the complaint or its ad damnum clause.
In March 2012, Rudman transferred the subject property to the defendant BP Hatzlucha Management Corp. (hereinafter BP Hatzlucha), for which BP Hatzlucha paid a New York State real estate transfer tax in the sum of $100. By order dated March 28, 2013, the Supreme Court granted Option One's motion, inter alia, to voluntarily discontinue the 2006 action.
By assignment dated October 15, 2015, Residential assigned the subject note and mortgage to the plaintiff herein. In December 2015, the plaintiff commenced this action against, among others, BP Hatzlucha to foreclose the mortgage, alleging, inter alia, that Rudman had defaulted on his mortgage by failing to make the payment due January 1, 2010, and all payments due thereafter. BP Hatzlucha interposed an answer asserting, among other things, an affirmative defense that the action was time-barred and a counterclaim pursuant to RPAPL 1501(4) to cancel and discharge the subject mortgage.
In August 2016, the plaintiff moved, inter alia, for summary judgment on the complaint insofar as asserted against BP Hatzlucha, to dismiss the affirmative defenses and counterclaims, and to appoint a referee to compute the amount due to the plaintiff. With regard to the statute of limitations affirmative defense raised in BP Hatzlucha's answer, the plaintiff contended that the 2006 action did not accelerate the debt because Option One lacked standing to commence that action. Consequently, the plaintiff argued that the statute of limitations did not begin to run upon the filing of the 2006 action.
In opposition, BP Hatzlucha argued, inter alia, that the documentation submitted by the plaintiff, including the 2006 assignment, the note with allonges, and the complaint filed in the 2006 action, raised triable issues of fact regarding whether Option One physically delivered or endorsed the note to Residential prior to commencing the 2006 action. Moreover, BP Hatzlucha noted that a subsequent "Corporate Assignment of Mortgage" was executed by Sand Canyon Corp., formerly known as Option One, on August 7, 2012, which purported to transfer the subject mortgage to Residential as of that date.
In an order dated June 5, 2017, the Supreme Court, inter alia, granted the plaintiff's motion, among other things, for summary judgment on the complaint insofar as asserted against BP Hatzlucha and to appoint a referee to compute the amount due to the plaintiff. Following a hearing, the referee issued a report setting forth his findings regarding the amount due and owing on the note. The plaintiff moved to confirm the referee's report and for a judgment of foreclosure and sale. In an order and judgment of foreclosure and sale dated October 31, 2018, the court granted the plaintiff's motion to confirm the referee's report and for a judgment of foreclosure and sale, and directed the sale of the subject property. BP Hatzlucha appeals.
To have standing to commence a foreclosure action, a plaintiff must have been the holder or assignee of the note at the time the action was commenced (see Aurora Loan Servs., LLC v Taylor, 25 NY3d 355, 361-362), and "the note . . . is the dispositive instrument that conveys standing to foreclose under New York law" (id. at 361). "Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident" (U.S. Bank, N.A. v Collymore, 68 AD3d 752,754; see Aurora Loan Servs., LLC v Taylor, 25 NY3d at 361-362; Federal Natl. Mtge. Assn. v Onuoha, 172 AD3d 1170, 1172; Marchai Props., L.P. v Fu, 171 AD3d 722, 724). Although our dissenting colleague suggests that the concept that standing arises from either the possession of the note or the assignment of it is of recent and misguided jurisprudence, that premise is incorrect. Indeed, the standing of the assignee of a note has long been recognized in both New York (see Merritt v Bartholick, 36 NY 44, 45 [1867]) and federal (see Carpenter v Longan, 83 US 271, 275 [1872]) jurisprudence. The dissent's reliance on the law of our 49 sister states as applied in New York trial court decisions is of no moment in this case. Further, it is disconcerting that our dissenting colleague relies upon trial court criticism of our long-standing jurisprudence with regard to standing.
An action to foreclose a mortgage is subject to a six-year statute of limitations (see CPLR 213[4]; Kashipour v Wilmington Sav. Fund Socy., FSB, 144 AD3d 985, 986; Nationstar Mtge., LLC v Weisblum, 143 AD3d 866, 867). "'[E]ven if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt'" (Nationstar Mtge., LLC v Weisblum, 143 AD3d at 867, quoting EMC Mtge. Corp. v Patella, 279 AD2d 604, 605).
"An acceleration of a mortgage debt can occur when a creditor commences an action to foreclose upon a note and mortgage and seeks, in the complaint, payment of the full balance due" (Wells Fargo Bank, N.A. v Lefkowitz, 171 AD3d 843, 844 [internal quotation marks omitted]). "However, service of a complaint is ineffective to constitute a valid exercise of the option to accelerate a debt where the plaintiff does not 'have the authority to accelerate the debt or to sue to foreclose at that time'" (MLB Sub I, LLC v Grimes, 170 AD3d 992, 993, quoting Wells Fargo Bank, N.A. v Burke, 94 AD3d 980, 983; see J & JT Holding Corp. v Deutsche Bank Natl. Trust Co., 173 AD3d 704, 707).
Here, the plaintiff established, prima facie, that Option One lacked standing to commence the 2006 action and, as a result, it did not have authority to validly exercise the option to accelerate the debt (see J & JT Holding Corp. v Deutsche Bank Natl. Trust Co., 173 AD3d at 707; U.S. Bank N.A. v Gordon, 158 AD3d 832, 836). The 2006 assignment executed by Option One assigned both the note and the mortgage to Residential prior to Option One's commencement of the 2006 action on October 24, 2006. Moreover, according to the 2006 assignment, Option One had endorsed the note to Residential by assigning "all right, title and interest in said note and all rights accrued under said Mortgage and all indebtedness secured thereunder" "[e]ffective as of 10-23-06" (emphasis added). The assignment was duly recorded in the office of the City Register on June 15, 2007, affording notice to Rudman and BP Hatzlucha prior to the transfer of the subject property in March 2012. Thus, the plaintiff's evidence showed that when Option One commenced the 2006 action, Residential was the lawful assignee of the note and the mortgage (see J & JT Holding Corp. v Deutsche Bank Natl. Trust Co., 173 AD3d at 707; 21st Mtge. Corp. v Adames, 153 AD3d 474, 475).
Option One acknowledged as much in its complaint wherein it alleged being the holder of only the mortgage, not the note. Our dissenting colleague's reliance upon the verification or certification of Option One's attorney does not in any way support the conclusion that Option One was the holder of the note at the time the 2006 action was commenced. An attorney inspecting a note for the purpose of drafting a complaint and a mortgagee being the holder of the note are two entirely different legal concepts. Option One's counsel's artful failure to mention that Option One was the holder of the note cannot be ignored.
We disagree with our dissenting colleague's assertion that Option One, after its assignment of the note and mortgage to Residential, continued to have standing to commence and prosecute the 2006 action. Our dissenting colleague misreads the holding in Wilmington Sav. Fund Socy., FSB v Matamoro (200 AD3d 79, 90-91), wherein we held that there are three bases to establish standing in residential foreclosure actions. There is no dispute with regard to the second two bases for finding standing; to wit: a plaintiff's physical possession of the note prior to commencement of the foreclosure action with an allonge or endorsement in blank or to the plaintiff (second basis), or an assignment of the note to the plaintiff prior to the commencement of the foreclosure action (third basis). However, while the Matamoro Court described the first basis for standing as being "where the plaintiff is the original lender in direct privity with the defendant" (id. at 90-91), the second part of the description explained that "[t]he direct privity is rarely seen in residential mortgage foreclosure litigations, given the nature of the home lending business where financial instruments are routinely sold, assigned, or 'bundled' from one institution to another between the time funds are initially dispersed by a lender and the commencement of a later foreclosure action" (id. at 91 [emphasis added]). The Matamoro Court's holding and description of the nature of the market falls squarely into the facts of this case. Contrary to our dissenting colleague's rationale that the original lender retains the right to sue on a note that it has fully assigned, we have held that"'[a]n absolute assignment of a bond and mortgage transfers to the assignee all rights theretofore conferred upon the assignor-mortgagee to enforce the bond and mortgage'" (Gasco Corp. & Gordian Group of Hong Kong v Tosco Props., 236 AD2d 510, 512, quoting 78 NY Jur 2d, Mortgages & Deeds of Trust, former § 270, at 101 [emphasis added]). Our dissenting colleague's attempt to finesse her position on standing as expressed in her footnote ignores our holding in Gasco with regard to the absolute assignment of the mortgage and the note. Thus, Option One, at the time of commencement of the 2006 foreclosure action, was not in direct privity with Rudman, the maker of the note. Taken to its logical conclusion, our dissenting colleague [*2]is giving her imprimatur to simultaneous foreclosure actions by the original lender which received consideration for the assignment on the one hand and its assignee on the other.
In opposition to the plaintiff's prima facie showing, BP Hatzlucha failed to raise a triable issue of fact. Contrary to BP Hatzlucha's contention, the filing of the corporate assignment of the mortgage in 2012, which did not contain any reference to the note, did not impact the prior assignment of the note in 2006. Moreover, since the mortgage "passes with the debt as an inseparable incident" (U.S. Bank, N.A. v Collymore, 68 AD3d at 754), the validity of the purported later assignment solely of the mortgage is irrelevant with respect to the issue of standing (see Aurora Loan Servs., LLC v Taylor, 25 NY3d at 362; Deutsche Bank Natl. Trust Co. v Smartenko, 199 AD3d 643; Wilmington Sav. Fund Socy., FSB v Hershkowitz, 189 AD3d 1126, 1128). Further, since the 2006 assignment specifically stated that Option One was assigning the note to Residential, it was not necessary for the plaintiff to submit proof as to when the note was endorsed to Residential or physically delivered to Residential, since the written assignment of the underlying note prior to the commencement of the 2006 action was sufficient to demonstrate that Option One no longer had standing at the time of commencement (see U.S. Bank, N.A. v Collymore, 68 AD3d at 754; see also Aurora Loan Servs., LLC v Taylor, 25 NY3d at 361-362). In any event, the 2006 assignment established that the note was endorsed to Residential as of the date of execution, April 13, 2006, since the endorsement is referenced in the assignment. This assignment cannot merely be dismissed out of hand as "boilerplate," as does our dissenting colleague, inasmuch as it is consistent with the language set forth in Schedules O and P in Real Property Law § 258 and with the understanding of the parties.
Further, Rudman's failure to raise an objection to Option One's standing in the context of the 2006 action is immaterial in light of Option One's undisputed lack of interest in the claim on which it sued. "[S]tanding requires an inquiry into whether the litigant has 'an interest in the claim at issue in the lawsuit that the law will recognize as a sufficient predicate for determining the issue at the litigant's request'" (Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d 239, 242, quoting Caprer v Nussbaum, 36 AD3d 176, 182). The cases cited by our dissenting colleague address factual scenarios different from those presented here. In this case, the lack of Option One's ownership interest in the note at the time of commencement of the 2006 action is dispositive (see J & JT Holding Corp. v Deutsche Bank Natl. Trust Co., 173 AD3d at 707; MLB Sub I, LLC v Grimes, 170 AD3d at 993; Wells Fargo Bank, N.A. v Burke, 94 AD3d at 983).
BP Hatzlucha's contention that the plaintiff's motion, inter alia, for summary judgment on the complaint insofar as asserted against it and to appoint a referee to compute the amount due was procedurally defective is without merit. Contrary to BP Hatzlucha's contention, the affidavit of Christopher Caldwell, an employee of the plaintiff, through which the plaintiff submitted several exhibits, was not defective even though it was executed outside New York and did not contain a certificate of conformity. "Out-of-state affidavits need merely conform 'substantially' to [Real Property Law § 309-b] to be adequate" (Midfirst Bank v Agho, 121 AD3d 343, 351). Immediately following Caldwell's signature, his affidavit contained the following language:
"STATE OF TENNESSEE )
"COUNTY OF KNOX )ss.:
"On the 11th day of August, 2016, before me personally came Christopher Caldwell, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and he acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument, and that such individual made such appearance before the undersigned in the City of Knoxville, Tennessee.
"[Signature]
"NOTARY PUBLIC."
Since this language mirrored the language set forth in Real Property Law § 309-b(1) almost exactly, it constitutes a certificate of conformity (see Real Property Law § 309-b[1]; Midfirst Bank v Agho, 121 AD3d at 350-351).
"A referee . . . before entering upon his [or her] duties, shall be sworn faithfully and fairly to do such acts and make such determination and report as the order requires" (CPLR 4315). "The oath may be waived upon consent of all parties" (id. § 4315). Here, BP Hatzlucha's conduct during and after the referee's hearing indicates that BP Hatzlucha "impliedly waived the oath requirement" (Flotteron v Steinberg, 106 AD2d 427, 427).
"At any stage of an action . . . the court may permit a mistake, omission, defect or irregularity . . . to be corrected, upon such terms as may be just, or, if a substantial right of a party is not prejudiced, the mistake, omission, defect or irregularity shall be disregarded" (CPLR 2001). Here, although the plaintiff initially failed to submit the transcript from the referee's hearing with its motion to confirm the referee's report and for a judgment of foreclosure and sale, it submitted that transcript in its reply papers, and the Supreme Court properly considered it (see Pavane v Marte, 109 AD3d 970, 970-971). The plaintiff demonstrated that BP Hatzlucha received the transcript before the plaintiff moved, inter alia, to confirm the referee's report, and the plaintiff's omission of the transcript from its initial motion papers did not prejudice BP Hatzlucha (see id. at 971; Mazzarelli v 54 Plus Realty Corp., 54 AD3d 1008, 1008).
BP Hatzlucha's remaining contentions are either unpreserved for appellate review or without merit.
AUSTIN, J.P., CONNOLLY and IANNACCI, JJ., concur.
BARROS, J., dissents, and votes to reverse the order and judgment of foreclosure and sale, on the law, deny the plaintiff's motion to confirm the referee's report and for a judgment of foreclosure and sale, deny those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against the defendant BP Hatzlucha Management Corp. and to appoint a referee to compute the amount due to the plaintiff, and to modify the order dated June 5, 2017, accordingly, with the following memorandum:
I.
At issue on this appeal is whether, in support of its motion, inter alia, for summary judgment, the plaintiff established its prima facie entitlement to judgment as a matter of law dismissing the affirmative defense and counterclaim of the defendant BP Hatzlucha Management Corp. (hereinafter BP Hatzlucha) asserting that this action is time-barred. The plaintiff contends that its predecessor, Option One Mortgage Corporation (hereinafter Option One), lacked standing to commence a 2006 foreclosure action, and, therefore, did not validly accelerate the mortgage debt and start the running of the statute of limitations at that time. As set forth herein and under the circumstances of this case, the plaintiff, whose rights to enforce the note are derived from Option One's contractual relationship with the defendant Mannes Rudman, should be judicially estopped from challenging Option One's standing in the 2006 action for purposes of avoiding the statute of limitations.
In any event, contrary to the majority's determination, the plaintiff failed to meet its prima facie burden since it did not submit any evidence demonstrating, among other things, that Option One, who was the original lender in direct privity with Rudman, physically delivered the note to Residential Funding Company, LLC (hereinafter Residential), prior to commencement of the 2006 foreclosure action. As such, the plaintiff failed to show, prima facie, that Option One was not the noteholder with authority to accelerate the mortgage debt upon commencement of the 2006 action.[FN1]
[*3]II.
On April 5, 2006, Rudman executed a note with Option One in the sum of $598,500. The note was secured by a mortgage on real property located in Brooklyn. By summons and complaint filed October 24, 2006, Option One commenced an action to foreclose the mortgage (hereinafter the 2006 action), alleging that Rudman delivered it the note, that Rudman defaulted under the terms of the note and mortgage, and that Option One elected to call due the entire amount secured by the mortgage. In a sworn attorney verification attached to the 2006 complaint, counsel for Option One averred that certain matters in the complaint were based upon "the original note, mortgage and/or financial statements, together with correspondence" (emphasis added). In November 2007, a judgment of foreclosure and sale was entered in the 2006 action. In March 2012, Rudman transferred the subject property to BP Hatzlucha. By order dated March 28, 2013, the Supreme Court granted Option One's motion, inter alia, to vacate the judgment of foreclosure and sale and to voluntarily discontinue the 2006 action.
In December 2015, the plaintiff commenced this action to foreclose the mortgage against BP Hatzlucha, among others. BP Hatzlucha interposed an answer asserting, inter alia, an affirmative defense based upon the expiration of the statute of limitations, and a counterclaim under RPAPL 1501(4) seeking to quiet title based upon the expiration of the statute of limitations.
The plaintiff moved, inter alia, for summary judgment on the complaint insofar as asserted against BP Hatzlucha, to dismiss the affirmative defenses and counterclaims, and to appoint a referee to compute the amount due to the plaintiff. The plaintiff argued that BP Hatzlucha's affirmative defense and counterclaim asserting that this action is time-barred should be dismissed. In this regard, the plaintiff contended that its predecessor, Option One, did not have standing to commence the 2006 action and, therefore, did not validly accelerate the mortgage debt. As such, the statute of limitations never began to run (see MLB Sub I, LLC v Grimes, 170 AD3d 992, 993; Wells Fargo Bank, N.A. v Burke, 94 AD3d 980, 983).
In support of its motion, the plaintiff produced an assignment of mortgage which was executed on April 13, 2006, and made effective on October 23, 2006 (hereinafter the 2006 assignment), reciting, inter alia, that Option One "has endorsed said note" and "hereby assign[s] and transfer[s]" it to Residential. The plaintiff argued that, given the assignment's effective date of October 23, 2006, Option One was no longer the noteholder when it commenced the action on October 24, 2006, and therefore lacked authority to accelerate the mortgage debt at that time (see MLB Sub I, LLC v Grimes, 170 AD3d at 993; Wells Fargo Bank, N.A. v Burke, 94 AD3d at 983). Based upon the 2006 assignment, which was produced in this 2015 action, the Supreme Court determined that Option One lacked standing in the 2006 action, and, therefore, granted the plaintiff's motion, inter alia, for summary judgment. The court issued an order and judgment of foreclosure and sale, upon the order, among other things, directing the sale of the subject property, and BF Hatzlucha appeals. I vote to reverse the order and judgment of foreclosure and sale.
III.
Under our jurisprudence, the commencement of a foreclosure action is ineffective to constitute a valid exercise of the option to accelerate a mortgage debt where the plaintiff did not have standing to commence the foreclosure action (see MLB Sub I, LLC v Grimes, 170 AD3d at 993; Wells Fargo Bank, N.A. v Burke, 94 AD3d at 983). Thus, where a prior action has been dismissed by a court for lack of standing (see J & JT Holding Corp. v Deutsche Bank Natl. Trust Co., 173 AD3d 704, 706; U.S. Bank N.A. v Gordon, 158 AD3d 832, 836) or discontinued for lack of standing (see Wells Fargo Bank, N.A. v Burke, 94 AD3d 980), this Court has determined that the statute of limitations did not begin to run upon commencement of those actions. In those two scenarios—a [*4]dismissal or discontinuance—the defendant has successfully argued lack of standing, or the plaintiff has taken the unequivocal overt act of voluntarily discontinuing the action (see Freedom Mtge. Corp. v Engel, 37 NY3d 1, 25).
In contrast to those scenarios, here, the plaintiff seeks to now litigate the issue of its predecessor's standing in the 2006 action in order to avoid the statute of limitations. This raises various substantive and procedural issues, including whether a plaintiff should be judicially estopped from challenging its predecessor's standing where, as here, the issue of standing was never determined or even called into question in the prior action, and whether it is even proper for a plaintiff to select documentation that was never introduced in the prior action to challenge its predecessor's standing. Conducting a historical reconstruction of a predecessor's standing, wherein courts are presented with documents that are generally unreliable in cases commenced and resolved many years ago, makes it so that the timeliness issue cannot be ascertained with any degree of certainty (see Freedom Mtge. Corp. v Engel, 37 NY3d at 31).
"A foreclosure action is equitable in nature and triggers the equitable powers of the court" (Rajic v Faust, 165 AD3d 716, 717 [internal quotation marks and brackets omitted]; see Onewest Bank, FSB v Kaur, 172 AD3d 1392, 1393-1394). "Once equity is invoked, the court's power is as broad as equity and justice require" (Onewest Bank, FSB v Kaur, 172 AD3d at 1394 [internal quotation marks omitted]).
When the affirmative defense of standing is never raised by a defendant in a mortgage foreclosure action, the defense is deemed waived (see US Bank N.A. v Nelson, 36 NY3d 998, 999; GMAC Mtge., LLC v Coombs, 191 AD3d 37, 46-47; Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d 239, 244). When standing has been waived, the plaintiff may obtain a judgment of foreclosure and sale without having to plead or prove standing (see US Bank N.A. v Nelson, 36 NY3d at 999). Thus, when standing has been waived, the plaintiff's lack of standing is no impairment to the valid acceleration of the mortgage debt in a complaint seeking to foreclose a mortgage (see Freedom Mtge. Corp. v Engel, 37 NY3d at 25 [suggesting that mere technical deficiencies in a complaint do not impair the valid acceleration of the mortgage debt]; GMAC Mtge., LLC v Coombs, 191 AD3d at 47 [holding that RPAPL 1302-a did not "disturb well-settled case law holding that a party's lack of standing does not constitute a jurisdictional defect, and that the defense of standing should not be raised by a court, sua sponte"]).
Here, Rudman waived the affirmative defense of standing in the 2006 action. The plaintiff's predecessor Option One alleged that it was the original lender and noteholder, and expressly elected to accelerate the mortgage debt (see Wilmington Sav. Fund Socy., FSB v Matamoro, 200 AD3d at 90-91 [recognizing that the original lender in direct privity with the defendant has standing to commence a mortgage foreclosure action]). Option One's complaint in the 2006 action was accompanied by a sworn verification stating that counsel reviewed the original note. Given Rudman's contractual relationship with Option One, from whom he borrowed money and obtained the mortgage, Rudman had no reason to challenge Option One's standing. Ultimately, based upon the uncontroverted allegations in its 2006 complaint, Option One obtained a judgment of foreclosure and sale in the 2006 action.
The plaintiff, who is an assignee of the mortgage and note, acquired no rights greater than those of Option One, and took its assignment subject to all defenses and counterclaims which the defendants had against Option One (see New York & Presbyt. Hosp. v Country-Wide Ins. Co., 17 NY3d 586, 592-593; Muller v Kling, 209 NY 239, 243; Everhome Mtge. Co. v Aber, 195 AD3d 682, 687; U.S. Bank N.A. v Denisco, 96 AD3d 1659, 1661; State St. Bank & Trust Co. v Boayke, 249 AD2d 535). As such, the plaintiff, as an assignee, is bound by Option One's assertion in the 2006 complaint that it was the original lender and noteholder and that it elected to call the entire mortgage debt due (see generally Everhome Mtge. Co. v Aber, 195 AD3d at 687), and should be precluded from now adopting a different position for purposes of avoiding the statute of limitations (see Secured Equities Invs. v McFarland, 300 AD2d 1137 [assignee judicially estopped from claiming that there was never a proper acceleration of the mortgage for purposes of avoiding the statute of limitations]).
[*5]IV.
Assuming, arguendo, that it is necessary to engage in a historical reconstruction of Option One's standing in the 2006 action so as to determine whether the statute of limitations has expired (cf. Freedom Mtge. Corp. v Engel, 37 NY3d at 31), there are triable issues of fact as to whether Option One had standing in the 2006 action.
There is some language in the recent decisions from the Court of Appeals indicating that a plaintiff has standing in a mortgage foreclosure action only when it is a noteholder (see Freedom Mtge. Corp. v Engel, 37 NY3d at 19 [referring only to "noteholders"]; Aurora Loan Servs., LLC v Taylor, 25 NY3d 355, 361-362 [referring to the "holder of the note" as having standing]; see also UCC 1-201[b][21][A] [defining holder of a note]).
However, the departments of the Appellate Division hold that a plaintiff may establish standing when it is either the holder or assignee of the note (see Beneficial Homeowner Serv. Corp. v KeyBank N.A., 177 AD3d 1253, 1255; Goldman Sachs Mtge. Co. v Mares, 166 AD3d 1126, 1129; Deutsche Bank Natl. Trust Co. v Idarecis, 133 AD3d 702, 703; Bank of N.Y. v Silverberg, 86 AD3d 274, 279; U.S. Bank, N.A. v Collymore, 68 AD3d 752, 754). As my colleagues in the majority point out, in Merritt v Bartholick (36 NY 44 [1867]), a case decided nearly a century before this State's adoption of the Uniform Commercial Code in 1962, the Court of Appeals held that a transfer of the mortgage without the debt is a nullity. In reaching that conclusion, the Court of Appeals stated, in dicta, that "[u]nless then, the bond was, in effect, assigned with the mortgage," the assignee obtained no interest in the mortgage (id. at 45 [emphasis added]). The Court, however, did not define what it meant by "in effect assign[ ]" the bond, and did not expressly address whether a note may be enforced by one who is "assigned," but who does not have physical possession of, the note.
More recently, in 2015, in Aurora Loan Servs., LLC v Taylor (25 NY3d at 361), the Court of Appeals expressly relied upon a reporter's note to section 5.4 of Restatement [Third] of Property [Mortgages] for the same proposition stated in Merritt v Bartholick (36 NY 44). That same reporter's note states that "[o]wnership of a contractual obligation can generally be transferred by a document of assignment . . . . However, if the obligation is embodied in a negotiable instrument, a transfer of the right to enforce must be made by delivery of the instrument" (Restatement [Third] of Property [Mortgages] § 5.4, Reporter's Note, Comment b [emphasis added]).
Even so, under the Appellant Division jurisprudence, it has been held that a person who has been assigned the note, but who does not have physical possession of it, has standing to enforce the note by commencing a mortgage foreclosure action (see Beneficial Homeowner Serv. Corp. v KeyBank N.A., 177 AD3d at 1255 [where there is an "effective assignment of both the mortgage and the note, physical delivery of the note is not required for the assignee to lawfully take action on the mortgage"]; Goldman Sachs Mtge. Co. v Mares, 166 AD3d at 1129 [plaintiff established standing by proving that it had been assigned note before commencement even though precluded from submitting evidence of physical possession of note]).
At the same time, a person who has physical possession of a properly endorsed note, whether or not he or she is the owner of the note, also has standing to enforce the note in [his or her] own name by commencing a mortgage foreclosure action (see UCC 3-301; Bank of N.Y. Mellon Trust Co., NA v Obadia, 176 AD3d 1020, 1023). In my opinion, the Appellate Division jurisprudence on standing raises concerns because it fails to protect the maker of the note, i.e., the borrower, who has paid an assignee from a subsequent claim by a holder in due course (see UCC 3-305), against whom a defense of discharge upon payment is not available (see UCC 3-602; 3-603; Bank of N.Y. Mellon v Deane, 41 Misc 3d 494 [Sup Ct, Kings County 2013]). Notably, this jurisprudence puts New York out of step with 49 other states that require a physical delivery of the note to accompany an assignment (see Bank of N.Y. Mellon v Deane, 41 Misc 3d 494).
Here, contrary to the majority's determination, the 2006 assignment demonstrates nothing more than that, under Appellate Division jurisprudence, Residential, as the assignee of the note, was entitled to enforce the note as of the day before Option One's commencement of the 2006 foreclosure action. However, the issue on this appeal is not whether Residential had standing, but, [*6]rather, whether the plaintiff established, prima facie, that Option One lacked standing. The 2006 assignment does not negate Option One's uncontroverted allegation in the 2006 complaint that it was the original lender and noteholder, which allegation on its face evinced a valid basis for standing (see Wilmington Sav. Fund Socy., FSB v Matamoro, 200 AD3d at 90-91).
The plaintiff and my colleagues in the majority further rely upon preprinted language on the 2006 assignment stating, in boilerplate fashion, that the note was endorsed. The plaintiff and the majority imply that Residential became the holder of the note merely through an endorsement. However UCC 3-202(1) provides that a note payable to order, as here, is "negotiated by delivery with any necessary indorsement" (emphasis added). An endorsement is incomplete and may be disregarded and ignored until the note is physically delivered (see Hall v Bank of Blasdell, 306 NY 336, 342; Bank of N.Y. Mellon Trust Co., NA v Obadia, 176 AD3d at 1023). The plaintiff here failed to submit any evidence of a physical delivery of the note from Option One to Residential.
Notably, despite the recitation in the 2006 assignment that the note was endorsed, no endorsements appear on the face of the note itself even though there is ample blank space (see U.S. Bank N.A. v Moulton, 179 AD3d 734, 737 ["(a)n allonge may be needed when there is insufficient space on the document itself for the endorsements; as long as the allonge remains firmly affixed to the note, it becomes a part of the note"]). Rather, an undated endorsement from Option One payable to the order of Residential appears on an allonge. The 2006 assignment does not mention the existence of an allonge, specify the date or type of endorsement on the allonge, and, most critically, does not indicate whether the note was ever physically delivered to Residential.
The plaintiff did not submit papers from the 2006 action evincing that the note along with the allonge was ever submitted to the court in that action. The plaintiff did not submit any evidence, such as an affidavit or testimony from a person with knowledge, as to whether the note was physically delivered from Option One to Residential (see Aurora Loan Servs., LLC v Taylor, 25 NY3d at 361; U.S. Bank N.A. v Moulton, 179 AD3d at 737-738; McCormack v Maloney, 160 AD3d 1098, 1099-1100).
Thus, contrary to my colleagues' conclusion, the 2006 assignment does not, alone, negate that Option One, which was the original lender and noteholder within the meaning of UCC 1-201(b)(21)(A), may have had standing in the 2006 action.
Further contradicting its own claim that Option One lacked standing in the 2006 action, the plaintiff also submitted a copy of the complaint filed by Option One on October 24, 2006, which specifically alleges that Option One was the original lender and noteholder and that it elected to accelerate the mortgage debt. After filing that complaint, Option One later obtained a judgment of foreclosure and sale in 2007. That judgment was not vacated until 2013, and the reasons for vacatur are not apparent on this record. Nothing in the record suggests that Residential, as the owner of the note, ever challenged Option One's right to enforce the note in the 2006 action, or otherwise. Indeed, the course of proceedings suggests quite the opposite, i.e., that Residential acquiesced, and thus, ratified Option One's election to accelerate the mortgage debt.
Thus, viewing the evidence in the light most favorable to the nonmoving party and affording such party the benefit of every favorable inference, documentation submitted by the plaintiff, at most, raises a triable issue of fact as to whether Option One was the noteholder when it commenced the 2006 action. As such, the plaintiff failed to establish, prima facie, that Option One's purported acceleration of the mortgage debt in 2006 was invalid as a matter of law. Accordingly, the Supreme Court should have denied those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against BP Hatzlucha and to appoint a referee to compute the amount due to the plaintiff, regardless of the sufficiency of BP Hatzlucha's opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
V.
There is need for clarity and consistency in contracts affecting real property ownership and the application of the statute of limitations (see Freedom Mtge. Corp. v Engel, 37 [*7]NY3d at 19). Thus, acceleration of the maturity of the mortgage debt may only be accomplished through an "overt, unequivocal act" (id. at 27). The filing of a complaint by Option One, the original lender in direct contractual privity with Rudman, seeking a mortgage foreclosure, is such an unequivocal overt act evincing a contractual election to accelerate the mortgage debt (see id. at 23). As the original lender in direct privity with Rudman, Option One was unquestionably a noteholder. Given the contractual relationship, Rudman would have had no reason to, and did not, challenge Option One's standing. Option One's uncontroverted allegations in the 2006 complaint were sufficient to obtain a judgment of foreclosure and sale. The plaintiff, whose rights to enforce the note are derived from Option One's contact with the borrower, should not now, for the first time, be permitted to select documentation from its file, which may not have even been submitted in the 2006 action, to undermine Option One's standing in the 2006 action so as to avoid the statute of limitations. The majority's approach in permitting plaintiffs in residential mortgage foreclosure actions to avoid the statute of limitations by challenging their predecessor's standing in a prior foreclosure action, where the predecessor's standing had never been determined, will only create further uncertainty in the application of the statute of limitations due to the perplexity of the standing jurisprudence. This process, which would in many cases require courts to hold evidentiary hearings on the plaintiff's predecessor(s)' standing in prior foreclosure action(s), wastes limited judicial resources on the most neglected residential mortgage foreclosure actions.
Accordingly, I vote to reverse the order and judgment of foreclosure and sale, deny the plaintiff's motion to confirm the referee's report and for a judgment of foreclosure and sale, and deny those branches of the plaintiff's motion which were for summary judgment on the complaint insofar as asserted against BP Hatzlucha and to appoint a referee to compute the amount due to the plaintiff.
ENTER:
Maria T. Fasulo
Clerk of the Court



Footnotes

Footnote 1: My colleagues in the majority misstate my position on the standing issue. My position is not that an original lender has standing in a foreclosure action for all time, and I agree with the majority that this Court's opinion in Wilmington Sav. Fund Socy., FSB v Matamoro (200 AD3d 79) should not be so construed. Rather, my position is that the plaintiff failed to eliminate triable issues of fact as to whether Option One was a "holder" of the note within the meaning of UCC 1-201(b)(21)(A) at the time of commencement, i.e., it was in physical possession of the note payable to it. Indeed, there is no evidence of a physical delivery of the note from Option One (the original noteholder) to Residential.